(136 So. 71)

STATE v. BROOKS.

No. 31237.

June 22, 1931.

Frank B. Ellis, of Covington, for appellant.

Percy Saint, Atty. Gen., E. R. Schowalter, Asst. Atty. Gen., and C. Sidney Frederick, Dist. Atty., of Covington, for the State.

LAND, J.

The indictment in this case charges that defendant did receive and take into his possession, as agent, trustee, or pastor of the First Baptist Church, Covington, La., a certain check for $400 payable to the First Baptist Church, and the said check and money did feloniously and wrongfully embezzle, dispose of, and convert to his own use.

Defendant was found guilty as charged by nine out of twelve jurors, and was sentenced to imprisonment in the state penitentiary at hard labor for not less than seven years nor more than fourteen years.

Defendant has appealed, and presents for our consideration seventeen bills of exceptions.

Bill of Exception No. 1.

This bill was reserved to the refusal of the trial judge to permit defendant to withdraw his plea of not guilty and to file a motion to quash the indictment.

The motion to quash alleges that the indictment does not set out with any degree of

certainty that the First Baptist Church of Covington was the owner of the property, which it is charged was embezzled, and that it must be clearly shown that defendant stands in a fiduciary relationship to the owner of the property that is embezzled.

Defendant prays that the motion to quash be sustained, and that the indictment be amended instanter, otherwise that it be adjudged null and void.

In the per curiam to this bill, it is stated by the trial judge that:

"The motion to quash covered in this bill was not offered for filing until the day of trial, and when the case was called for trial. As the defendant had been arraigned for some time, and no effort was made to file a motion to quash, nor request made to withdraw the plea of not guilty for that purpose, the court deemed it *too late and an unnecessary cause of delay* to permit the plea to be withdrawn and the motion filed. The matter was *in the discretion* of the court, and the defendant was not prejudiced by the action of the court. Article 284, Code Cr. Proc.

"Moreover, the indictment alleges that the money which defendant was charged with having embezzled, was in the form of a check payable to the First Baptist Church, and that defendant sustained to said church the relation of agent, trustee, or pastor. This is sufficient to charge an offense under the statute. Code Cr. Proc. arts. 235, 236, and 245."

Article 284 of the Code declares that: "Every objection to any indictment shall be taken by demurrer or by motion to quash such indictment, *before the arraignment;* and every court before which any such objection shall be taken for any formal defect, may, if it be thought necessary, cause the indictment to be *forthwith amended* in such particular, and

thereupon the trial shall proceed *as if no defect had appeared."*

Article 265 of the Code provides that: "The defendant may at any time, *with the consent of the court,* withdraw his plea of not guilty and then set up some other plea or demur or move to quash the indictment."

█ It is clear, from the provisions of article 265, that a defendant, at any time *after arraignment,* may withdraw his plea of not guilty, *with the consent of the court,* and demur or move to quash the indictment.

As said in State v. Foster, 150 La. 971, 975, 91 So. 411, 413:

"The court refused to grant permission to withdraw the plea of not guilty, so that the motion to quash might be filed, but permitted defendant to offer his evidence, in support of that motion, to form part of the bill of exception reserved.

"While we are not impressed that the evidence thus offered shows that the indictment should be quashed, yet the matter properly comes before us on the refusal of the trial judge to permit the withdrawal of the plea of not guilty so as to afford defendant an opportunity to file the motion to quash. The withdrawal of the plea for such a purpose rests within the discretion of the trial judge, and the exercise of that discretion will not be interfered with save where it has been clearly abused. State v. Gregg, 123 La. 610, 49 So. 211; State v. Boudreaux, 137 La. 227, 68 So. 422; State v. Sandiford, 149 La. 933, 90 So. 261. There is no abuse of discretion in refusing to permit the withdrawal of the plea of not guilty where defendant has waited over a year, and until the day of trial, to move to withdraw it."

█ No such delay occurred in the case at bar, as only two months elapsed between the

date of arraignment of defendant and the day of trial.

That no further delay was intended by the defendant appears from the prayer of his motion that the indictment "be amended instanter," so as to clearly show the ownership of the check and defendant's fiduciary relationship to the owner.

Whether the indictment be sufficient in these respects is not now a matter before this court for decision, as defendant was not permitted to withdraw his plea of not guilty and file his motion to quash.

Be that as it may, defendant was unquestionably entitled to the amendments sought, as a bill of particulars, if nothing more, since this information was necessary to enable defendant to defend himself intelligently.

The short form of indictment for embezzlement is as follows in the Code of Criminal Procedure: "AB. embezzled (describe property embezzlement and state value of property.)" Article 235, p. 64.

Immediately following the short forms of indictment allowed in the above article is the following provision:

"Provided, That the District Attorney, if requested by the accused prior to arraignment may be required by the Judge to furnish a bill of particulars setting up more specifically the nature of the offense charged."

It is clear that this form of indictment does not state either the ownership of the property embezzled nor the fiduciary relation of the party charged to the owner.

Nor does the short form of indictment used in this case sufficiently do so.

█ The purpose of permitting a bill of particulars where a short form of indictment is used is to fully protect the accused, in-dicted under such form, in his constitutional right to be informed of the nature and cause of the accusation against him, and for this reason the provision as to a bill of particulars, where short forms of indictment are used, should be liberally interpreted.

Bill of Exception No. 2.

The district attorney, on direct examination, propounded the following question to a state witness:

"Q. Did Mr. Alexius make any demand on your church for the payment of this $400.00 for lumber?" (Being $400.00, which it is charged was embezzled, borrowed by the church from the Baptist Ass'n.)

"A. He did."

Defendant, through counsel, objected to this question "as incompetent, irrelevant, and immaterial for the reason that the indictment does not show any fiduciary relationship between this defendant and Mr. Alexius, and even if the duly constituted authorities of the church had previously promised to pay this money to Mr. Alexius, this did not vest him with any ownership of these funds. Further, the title to the property embezzled by an agent or other person occupying a fiduciary relationship must be in principal or employer, and having no principal or employer, then the charge of embezzlement falls."

█ The court ruled that, as the evidence then showed that the $400 was loaned to the church for the purpose of paying its debts, or to be used by the church in such manner as it saw fit, any question relating to the payment of the debts of the church will be relevant, as well as testimony as to any acts of the trustees, until it is further shown that there were minutes or written acts of the church.

Besides, the defendant claimed that he had a right to the funds charged to have been embezzled, by virtue of the action of the church in reimbursing him for money due and back salary.

█ The above testimony was also admissible as showing a counterclaim to this fund and tending to establish a felonious intent upon the part of defendant in appropriating it.

Bill of Exception No. 3.

█ The district attorney, on direct examination, propounded to John Elliott, a witness testifying in chief for the state, the following question:

"Q. Will you please state for what purpose the church borrowed this money from the Association?

"A. To pay Mr. Alexius."

To this question, defendant, through counsel, objected for the following reasons, to wit:

"That the minutes of a regular meeting of the congregation of said church, held in the church house on the 22nd day of November, 1929, and as transcribed in the handwriting of Velma Elliott, acting as secretary, and identified by a previous witness for the state, namely Estel Cole, vice-president of the Board of Trustees of said church, are the best evidence as to the purpose and reasons for which this money was borrowed from the Association.

"Any other evidence is merely secondary and inadmissible, particularly in view of the fact that this regular meeting of the congregation of the First Colored Baptist Church of Covington, Louisiana was held at a time when there was no dissension among the members of the church and all members were acting unanimously in furtherance of their business, and the written minutes of said church as aforesaid are herein set out in full as follows:

" 'Covington, La., Nov. 22, 1929.

" 'First Baptist Church met for regular business meeting, Pastor reading for open, Rome 8 Chapter first 7 verses, after prayer house was open for business. Mo. by Ed. Chany, Second by Bufford Hall that Pastor report be receive.

" 'Mo. was carried see report. Mo. by Bufford Hall, Second by Estel Cole, that the suggestion of Ed Chany concerning indetness of the pastor was except. Mo. by Estel Cole, Second by Ed. Chany, that we pay the pastor all the money that we borred from him and his back sarly (salary).

" 'Mo. by Bufford Hall, Second by Estel Cole that we pay the pastor his money out of the money we borred from the Ass. and raise the balance at early date.

" 'Mo. by Ed Chany, Second by Bufford Hall that we borrow money from Mr. E. Frederick and pay Mr. Alexius and take the remainder and finish the church.

" 'Mo. by Ed Chaney, Second by Estel Cole, that we would take money and go to Ponchatoula and by lumber.

" 'Mo. by Bufford Hall, Second by Estel Cole, that all members 3 months in rear would drop from roll.

" '[Signed]   Pastor J. H. Brooks
        "Velma Elliott, Act. as Sect.'

"Whereupon, the court overruled defendant's objection and permitted the question to be answered, ruling as follows: 'By the Court: The Court rules that inasmuch as some of the trustees testified contrary to the testimony of other trustees as to whether or not *the church as a body or the trustees as such, authorized the defendant to use the money for his personal benefit, and to pay him for the account the church might*

*have owed him,* is a question of fact, all of which is to go to the Jury and to be given any weight that they might see fit.'

"This question was relevant to show for what purpose the church borrowed the money from the Association, being the $400.00 which defendant is charged with embezzling. The witness was a trustee and several trustees testified that they knew nothing of a meeting of trustees held on Nov. 22, 1929, a copy of which appears in this bill. In fact there was considerable circumstantial evidence, and some direct evidence to the effect that the minutes above referred to, showing date of Nov. 22, were not passed on that date, but were put in the so-called minute book after this prosecution arose, at the instigation of the defendant, and for the purpose of shielding him in the prosecution, and that one or two of the trustees assisted him in this scheme. The minute book on which this entry appeared was a separate one from the one used prior to that time, written in a new book, and this entry almost in the middle of the book, with the front part unused. Whether this was done in this manner or not was purely a question of fact for the jury to decide, along with the other facts in the case, and this was proper under the evidence given by other witnesses."

As the genuineness of these minutes was at issue in the case, we cannot say that they constituted the best evidence as to the purpose for which the church borrowed the money from the association.

Defendant had the opportunity later on to present these minutes as his evidence, and to authenticate them by his own witnesses, in rebuttal of the testimony of the state witness that the money was borrowed to pay Mr. Alexius, and not the defendant.

### Bill of Exception No. 4.

The district attorney, on direct examination, propounded the following question to a state witness:

"Q. I want you to tell about the Board of Trustees, as to whether or not the trustees put Brooks out of the church on account of this money about the time he took it or shortly thereafter.

"A. They did."

Counsel for defendant objected to this question on the ground that it is incompetent, irrelevant, and immaterial.

It is stated by counsel for defense in brief, page 15: "We will agree that the testimony was admissible provided it was *first shown when* the defendant was put out of the church, *how* he was put out and *for what reason.*"

The question definitely asks if the trustees discharged Brooks "on account of this money" and *"about the time* he took it or shortly thereafter." ,

Besides, it is stated in the per curiam to this bill: "This question was permitted for the reason that there was considerable testimony in the case, some of which was elicited on cross-examination as to the fact that the trustees had supported Brooks as pastor of the church, and condoned his appropriating the money which he is charged with having embezzled. This evidence was admissible to show that the trustees had not condoned this act, but on the contrary had discharged him from the church as pastor."

### Bill of Exception No. 5.

This bill is waived by defendant as being without merit.

### Bill of Exception No. 6.

To a state witness testifying in rebuttal, the following question was asked:

"Q. Under the by-laws and regulations of your Association, would you be permitted to make a loan to a church for the purpose of paying the pastor's salary?"

By the Court: "Q. Have you the by-laws with you?

"A. No, sir.

"Q. Are they in writing?

"A. Yes, sir.

"Q. Where are the by-laws?

"A. In New Orleans."

These questions were objected to by defendant for the reason that the by-laws of the Colored Baptist Association are the best evidence of what they contain.

The court ruled that, as it appears that the by-laws are not now obtainable but are in New Orleans, the witness will be permitted to testify as to their conditions, and overruled the objection.

The best evidence of which the case is capable must be produced. It is admitted that the by-laws of the association were in writing, and, at the time of the trial, were in the city of New Orleans. The bill does not recite that the state had made any previous inquiries about the location of these by-laws, or had exerted any effort whatever to obtain the evidence of the party holding them.

It is well settled that secondary evidence may be given "of papers beyond the jurisdiction of the court, provided effort has been made to obtain the evidence of the party holding them." Whart. Crim. Ev. vol. 1 (10th Ed.) par. 200, p. 429.

The witness in this case was not the party in custody of the by-laws of the association in the city of New Orleans, and could not be permitted to testify as to their provisions, under the circumstances above related.

The judge a quo cites State v. Moore, 52 La. Ann. 605, 26 So. 1001, 1003, in support of his ruling. In our opinion, that case supports the position taken by defendant herein.

In the Moore Case it is said: "The court states, in support of the ruling, that the witness stated that he had read the letter which he was unable to produce. Thereupon the court ruled that the witness would be heard, but immediately after, at the suggestion of the district attorney, the court says the ruling was changed, and the witness did not testify as to its contents, and the court instructed the jury not to consider as testimony anything said by the witness as to this paper or letter."

### Bills of Exception Nos. 7, 8, 9, 10, 12, 13, 14, 15, and 16.

We pass these bills with the statement that they are special charges, which had been fully covered in the general charge to the jury.

### Bill of Exception No. 11.

Defendant requested the trial judge to give to the jury the following special charge: "12. Even if the Baptist Church *had promised* to pay Mr. Alexius out of these funds, this cannot be taken into consideration and has nothing to do with the issues involved in this case, as Mr. Alexius *was not the owner of* the money said to have been embezzled and there was no *fiduciary relationship* between Mr. Alexius and this defendant."

The trial judge states in the per curiam to this bill that the facts in the case did not justify this charge. The bill is therefore without merit.

Bill of Exception No. 17.

This bill was reserved to the overruling of the motion for a new trial, which is but a repetition of the errors assigned in the various bills of exceptions already reviewed.

As bill of exceptions No. 1, reserved to the refusal of the trial judge to allow the motion to quash to be filed, and as bill of exceptions No. 6, reserved to the admission of parol proof of the by-laws of the Baptist Association, are well taken, in our opinion, it is ordered that the conviction and sentence appealed from be annulled and set aside, and that this case be remanded to the lower court for a new trial in accordance with the views herein expressed.

ST. PAUL, J., dissents.