FOURNET, Justice.
 

 Hampton Pete having been charged in a bill of information with “the theft of an automobile, of the value of Twelve Hundred and no/100 ($1200.00) Dollars, the property of Gordons Drug Store, Inc.,” is here seeking to have his conviction thereunder and sentence to serve 2 years and 6 months at hard labor in the State Penitentiary reversed because of certain errors allegedly committed during the course of his trial, to which timely objections were made and bills of exceptions reserved.
 

 The first bill was reserved when the trial judge overruled the defendant’s motion— filed after the jury had been accepted and sworn and the first witness for the state had testified — seeking to have the bill of information quashed on the ground that the information failed to charge the defendant with any crime known to the Louisiana law and does not contain the essential averment required by Article 67 of the Criminal Code defining the crime of “theft” that the taking of the property was with the intent to deprive the owner thereof permanently; and that having thus been placed in jeopardy, he is entitled to be discharged.
 

 By its enactment of Act No. 43 of 1942 the Legislature of Louisiana adopted the Criminal Code wherein, in Article 67, theft is defined as “* * * the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations.” In the same article, it is declared that “An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.” But the decisions of this court in the cases of State v. Morgan, 204 La. 499, 15 So. 2d 866, and State v. Hebert, 205 La. 110, 17 So.2d 3, are not controlling here for the same Legislature (of 1942), in view of its adoption of the Criminal Code, amended and re-enacted in its Act No. 147 certain articles of the Code of Criminal Procedure (others being repealed), among them Article 235, dealing with the forms of accusations to be used in certain cases, no forms being provided in such act for the crimes involved in the Morgan and Hebert cases. In Article 235, as thus amended and re-enacted, we do find
 
 *1083
 
 that a person may be charged with theft by the simple method of describing the property, the subject of the theft, and stating its value.
 

 A mere reference to the bill of information shows that the defendant in this case was charged in the precise language of the Code of Criminal' Procedure, as amended by Act No. 147 of 1942. There was, therefore, no necessity for including in such charge the averment that the taking of the automobile by the defendant was with the intention of depriving the owner thereof permanently to make it valid or to distinguish it from the crime of “Unauthorized use of movables” defined in Article 68 of the Criminal Code. State v. Miller, 170 La. 51, 127 So. 361; State v. White, 172 La. 1045, 136 So. 47; State v. Ducre, 173 La. 438, 137 So. 745; and State v. Digilormo, 200 La. 895, 9 So.2d 221. Furthermore, the’ defendant’s constitutional guarantee that he shall be fully apprised in the accusation of the charge against him is amply protected by the provision in this same article “That the District Attorney, if requested by the accused prior to arraignment may be required by the Judge to furnish a bill of particulars setting up more specifically the nature of the offense charged.” State v. Brooks, 173 La. 9, 136 So. 71; State v. Dark, 195 La. 139, 196 So. 47.
 

 Of course that part of defendant’s motion seeking to be discharged because of former jeopardy is based on the supposition that his motion to quash was good and must, necessarily, fall with it.
 

 The defendant objected to the admission of a confession on his part to a deputy sheriff, Jerry L. Carruthers, on the ground that it had not been freely and voluntarily made, and reserved his. second bill of exceptions when the judge permitted such confession to be admitted over his objection. In his per curiam to this bill the trial judge states that “The evidence taken showed that the admission made by the' defendant was free and voluntary; that he admitted taking the automobile and indicated that he was ready to plead guilty to the charge. Clearly, the confession was admissible in every way.” We have read this evidence, which is attached to the bill, and we fully concur in the findings and conclusions of the trial judge in this respect.
 

 Bill of exceptions No. 3 was reserved to the overruling of the defendant’s motion for a new trial and No. 4 was reserved when his motion in arrest of judgment was overruled. In both of these motions, in addition to the issues just disposed of, the constitutionality of the Louisiana Criminal Code in its entirety is attacked, particularly Article 67 thereof. The constitutional issues thus raised are involved and confusing, but, we think, may be simmered down to the following five-pronged attack: That both Act No. 7 of 1940 instructing the Louisiana State Law Institute to prepare a draft or projet of a Criminal Code for the State of Louisiana and Act No. 43 of 1942 adopting the Code are unconstitutional because (1) they violate Section 2 of Article I of the Constitution of 1921, as amended, and the XIV Amendment to the Constitution of the United States by de
 
 *1085
 
 priving the defendant of his liberty without due process of law, for he has not been charged with any specific crime; (2) they violate the provisions of Section 16 of Article III of the Constitution of 1921 by embracing more than one object and by being broader than their respective titles; (3) they violate Sections 17 and 18 of Article III of the Constitution, particularly Article 67 of the Criminal Code, by seeking to revive, amend, and enact certáin articles of the code merely by reference and by seeking to adopt a system or code of laws merely by reference without reciting at length the several provisions of the law it seeks to re-enact; (4) the Legislature in these acts is endeavoring to delegate to the Louisiana Law Institute, by having it compile the Criminal Code, the duties imposed upon the Legislature by the Constitution, in contravention of the provisions of Section 1 of Article III of the Constitution of 1921; and (5) the Legislature was without authority, without the aid of a constitutional amendment, to so drastically change the criminal laws that have been in effect in this state since its admission into the Union.
 

 In his caustic attack on the constitutionality of the Criminal Code, defendant’s counsel h'as failed to point out any article of the Constitution that prohibits the Legislature from adopting such a code. It is elementary that state Constitutions are not grants of power to their respective legislative bodies but, rather, limitations of their general powers. Consequently, our Legislature may enact any law that is not expressly or inferentially prohibited by the Constitution of this state or of the United States.
 

 The two limitations placed on the power of the Legislature to adopt a code are found in Section 18 of Article III, where the Legislature is prohibited from adopting any system or code of laws by general reference only to such system or code of laws without the several provisions of the law thus sought to be enacted being recited at length, and in Section 24 of Article III, where it is provided, in an article dealing generally with the procedure to be followed by the Legislature in its enactment of bills, that “bills revising the statutes or codes of this State, or adopting a criminal code as a whole, shall be read and promulgated in such manner as may be prescribed by the Legislature.”
 

 Consequently, when -the Legislature found that it had become important and desirable to have the criminal law of this state as then “written” in the Crimes Act of 1805 and innumerable statutes passed subsequent thereto shorn of useless surplusage and so arranged that some order and uniformity might be brought to this confused mass of legislation, it enacted its Act No. 7 of 1940, in compliance with the constitutional mandate to be found in Section 24 of Article III, instructing the Louisiana State Law Institute to prepare a draft or pro jet of a Criminal Code for this state for submission in printed form to the Legislature not later than April 10, 1942, so that the Legislature of 1942 might have such projet for consideration when.drafting and adopting a Criminal Code for this
 
 *1087
 
 State, and providing that in the event such a code should be adopted, it be printed and published in book form in a volume separate from the regularly published volume of Acts of the Legislature under the title “Criminal Code of Louisiana.”
 

 In obedience to this legislative mandate, the Louisiana State Law Institute did prepare such a draft or projet, securing in the assistance of its preparation the services of the professors of criminal and civil ‘law at our three leading universities, Louisiana State, Tulane, and Loyola as reporters ; competent research assistants; an advisory committee composed of some of our leading attorneys, judges, and district attorneys; the late Professor Newman F. Baker, an authority on criminal law administration; and other distinguished scholars of criminal law throughout the country. This pro jet was offered to the legislature by the Louisiana State Law Institute in the form of an act of the Legislature. It was not only submitted, but it was also passed on and adopted by the Legislature at its regular session in 1942 after lengthy consideration. Obviously, therefore, since the Louisiana Criminal Code is an entirely new work, it cannot be considered as an effort to revive, amend, or enact articles of a code by reference only, in contravention of the provisions of Section 17 of Article III of the Constitution of 1921, and since it is entirely a creature of the Louisiana Legislature, it cannot be considered as coming within the constitutional limitations of Section 18 of Article III, since this court has held “that the words ‘any system or code of laws,’ as used in the article, means system or codes of law other than our own— systems of law, codes of law in vogue in other countries and jurisdictions.” State v. De Hart, 109 La. 570, 576, 33 So. 605, 607, followed with approval in State v. Thrift Oil & Gas Co., 162 La. 165, 110 So. 188, 51 A.L.R. 261.
 

 The contention that these acts are in violation of Section 16 of Article III of the Constitution is equally without merit, for it is the settled jurisprudence of this state, as pointed out in the case of State v. Martin, 192 La. 704, 189 So. 109, 110, quoting with approval the following from Marr’s Criminal Jurisprudence of Louisiana, that “*
 
 *
 
 * Article III, Section 16 of the Constitution means that the title shall be a brief and convenient index to the contents of the act and not that every detail appearing in the body of the act shall be set out in the title, for that would be to make the title a copy of the act. The rule is that whatever is germane or incidental to the purpose may be set out in the title, but if not so expressed is embraced that is to say, a cognate - matter will be covered by the title. * * *” Vol. 1, at page 11.
 

 As indicated in the title of Act No. 43 of 1942, its primary object is to- adopt a Criminal Code for the State of Louisiana. Necessarily the definition of crimes and the fixing of the penalties for the violation thereof are germane and may be included therein without a duplicity of objects. Likewise, the 'object of Act No. 7 of 1940 is to have the Louisiana State Law Institute prepare a projet of the Criminal Code, the other matters expressed in the title being merely incidental thereto.
 

 
 *1089
 
 Counsel’s next point is that the combination of several distinct crimes under the heading of “theft”, as was done in Article 67 of the Criminal Code, renders the article unconstitutional because it contains more than one object.
 

 We think this question was disposed of in finding no merit to counsel’s attack on the Criminal Code as a whole. Clearly the Legislature could define such crimes as were intended to be covered by the Criminal Code and, in so defining then!, could group all offenses of the same character in a single article, as was done in defining the crime of “theft” in Article 67. By such a definition the Legislature sought to denounce under the single heading of “theft” all of the crimes that it considered constituted the culpable taking of anything of value belonging to another, whether such taking was without the consent of the owner, commonly known as larceny, or the taking with his consent, as is the case in confidence games, embezzlement, and false pretenses. This is in accordance with the modern trend, followed in numerous states, of simplifying the law by discarding ancient and outmoded forms and re-defining offenses to prevent confusion and injustices.
 

 We are therefore of the opinion that the acts are constitutional and that the defendant was charged and tried on a valid indictment; consequently, that the trial judge properly overruled the defendant’s motions for a new trial and in arrest of judgment.
 

 For the reasons assigned, the conviction and sentence are affirmed.