Dear Mr. Drennen:
You requested the opinion of this office concerning Act No. 844 of the 2001 Regular Session of the Louisiana Legislature ("Act 844"). Section 1 of Act 844 states that "Its purpose is to permanently reduce the number of state employees, thereby reducing payroll costs, in a manner which furthers the fiscal needs of the state and which is fair and equitable to the employees of the state." Section 5(A) of Act 844 states: "It is the intention of this Act to effect a permanent and substantial reduction in the number of state employees and in the state payroll". Section 5(C)(1) states, in pertinent part "Any position which becomes vacant as a result of a persons retirement pursuant to the provisions of this Act . . . shall be abolished and shall only be reestablished upon the authorization . . . as set forth in Subsection B of this Section."
You advised that the term "state employee" is not defined in the Act. Many boards and commissions have positions which have classified state employees who participate in full state benefits, i.e. group health, retirement, etc., but which are not part of the State budgetary process, are not subject to any legislative appropriation process and are not required depository entities. Other legislatively created entities have employees which are not within the classified work force but are allowed to participate in state benefit programs and are also not part of the State budgetary process, are not subject to any legislative appropriation process and are not required depository entities of the State. In these cases, the fiscal impact on the State is neutral since such entities operate on non-state funds and draw no State support.
Your first question is whether Act 844 applies to only those positions within entities which have a direct monetary impact on state finances.
Civil Code Article 9 provides the general rule of law for construing or interpreting laws, as follows:
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature.
Civil Code Article 11 provides as follows:
 The words of a law must be given their generally prevailing meaning.
 Words of art and technical terms must be given the technical meaning when the law involves a technical matter.
Additionally, La.R.S. 1:3 reads as follows:
 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning in the law.
 The word "shall" is mandatory and the word "may" is permissive.
The common meaning of "state employee" is an officer or employee in either the executive, legislative or judicial branch of government, not including officers or employees of political subdivisions. Had the legislature intended that the only positions to be affected by Act 844 were those funded with state general fund dollars or through the Uniform Payroll System, surely they would have so stated.
While not specifically on point, we find other statutes defining a state employee to be helpful. One such example is the definition of "employee" for purposes of the Louisiana State Employees Retirement System ("LASERS"). For purposes of LASERS, an "employee" means any person legally occupying a position in state service. R.S. 11:403(11). A "position" is defined as "any office or any employment in the state service." R.S. 11:403(21). R.S. 11:403(28) defines "state service" as "the type of agency service performed by its employees, elected officials and appointed officials, who are members of the system or the type of agency service approved by the board." R.S. 11:403(4) defines "agency" as "any governmental body employing persons and includes departments, agencies, boards, commissions, and courts."
Your second question pertains to Section 5(C)(1) of Act 844 and whether those provisions override any previously existing specific statutory provisions which required the establishment or existence of specific positions within a state entity. We are of the opinion that your question must be answered in the negative. Section 5(C)(1) states in pertinent part as follows:
 (C)(1) Any position which becomes vacant as a result of a person's retirement pursuant to the provisions of this Act, including positions vacated by early retirement under R.S. 11:441(A)(4), shall be abolished and shall only be reestablished upon the authorization, jointly by the commissioner of administration and the director of the Department of State Civil Service with respect to the executive branch, the Legislative Budgetary Control Council with respect to the legislative branch, or the Judicial Budgetary Control Board with respect to the judicial branch, as set forth in Subsection B of this Section. No more than one-third of the positions abolished in each branch of state government in any one fiscal year may be so reestablished during that fiscal year. However, in no event may reemployment cause more than ten percent of the positions in each respective branch of state government, which have become vacated as a result of retirements made pursuant to the provisions of this Act, including positions vacated by early retirement under R.S. 11:441(A)(4), to be reestablished over any five-year period. (Emphasis added).
While the Louisiana Legislature possesses the authority to enact any law which is not prohibited by our constitution or the federal constitution,Davenport v. Hardy, 349 So.2d 858 (La. 1977); State v. Pete, 206 La. 1078,20 So.2d 368 (1944), repeal by implication is not favored. Repeals by implication require a determination of whether there is some indication of a legislative "intention to repeal" the statutes in question. Statev. Randall, 219 La. 578, 53 So.2d 689, 691 (1951). Such implied repeals are "not favored and will not be indulged if there is any other reasonable construction." State v. Standard Oil of La., 188 La. 978,178 So. 601, 626 (1973). A repeal by implication requires "nothing short of irreconcilable conflict between two statutes." Id. State v. Craig, 93-2515, 93-2654, 93-2589, p. 7 (La. 5/23/94); 637 So.2d 437, 443. More recently, our supreme court had another occasion to address the issue of "repeals by implication" stating:
 Louisiana Civil Code article 8 provides in pertinent part:
 Laws are repealed, either entirely or partially, by other laws. A repeal may be express or implied. It is express when it is literally declared by a subsequent law. It is implied when the new law contains provisions that are contrary to, or irreconcilable with, those of the former law.
 Nonetheless, it is well settled in the jurisprudence that repeals by implication are not favored. Thomas v. Highlands Ins. Co., 617 So.2d 877, 878 (La. 1993); State v. Piazza, 596 So.2d 817, 819 (La. 1992); In re Robin Sapia, 397 So.2d 469, 473 (La. 1981); Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576, 587 (La. 1974); State v. Standard Oil Co. of Louisiana, 188 La. 978, 178 So. 601, 626 (1937). As such, a repeal by implication will be found only where there is an irreconcilable conflict between two statutes and where there exists no possible construction that could give both statutes effect. In re Robin Sapia,
397 So.2d at 473; Standard Oil, 178 So. at 626. Jordan v. Louisiana Gaming Control Bd., 98-1122, 98-1133, 98-1134, p. 9 (La. 5/15/98); 712 So.2d 74, 80-81.
We cannot construe Act 844's abolition of "any position" to mean that the numerous laws contained in the Revised Statutes creating and establishing certain positions are repealed by implication. Surely if the legislature had desired to abolish statutorily created positions they would have stated so directly.
Our conclusion is further supported by the principle of statutory construction that where a general provision conflicts with a more specific provision, the more specific provision should be given effect — even if this involves restricting the application of the general principle. Smith v. Cajun Insulation, Inc., 392 So.2d 398 (La. 1980);State ex rel. Bickman v. Dees, 367 So.2d 283 (La. 1978); Esteve v.Allstate Ins. Co., 351 So.2d 117 (La. 1977); State v. Maduell,326 So.2d 820 (La. 1976).
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ____________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH