23 So.2d 106

**STATE v. VARNADO et al.**

No. 37680.

Dec. 11, 1944.

On Rehearing April 30, 1945.

Dissenting Opinion May 17, 1945.

Rehearing Denied June 5, 1945.

R. S. Ellis and Ponder & Ponder, all of Amite, for defendant-appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Sp. Asst. Atty. Gen., Bolivar E. Kemp, Dist. Attty., of Amite, and Joseph A. Sims, Asst. Dist. Atty., of Hammond, for plaintiff-appellee.

O'NIELL, Chief Justice.

The defendants are appealing from a conviction and sentence for gambling. The offense is defined in Article 90 of the Criminal Code. The sentence of one of the appellants, Charles Blackwell, is not enough to bring his case within the appellate jurisdiction of the court; hence his appeal must be dismissed, notwithstanding there is no motion to dismiss it. We understand though that the sentence against Blackwell is not to be carried out during the pendency of the appeal of Varnado, or unless his conviction and sentence are affirmed.

The principal complaint of the appellants was made in a motion to quash the bill of information. The motion was overruled. The contention is that the bill of information did not inform the defendants sufficiently of the nature and cause of the accusation against them, as required by Section 10 of Article I of the Constitution; that the statute itself does not define the offense or declare the manner in which it can be committed; and, specifically, that the bill of information did not inform the defendants as to which one of them was accused of conducting the alleged gambling game as a business, or as to which one of them was accused of assisting in conducting the gambling business.

The charge made in the bill of information was that the defendants "did intentionally conduct and directly assist in the conducting, as a business, of a game, contest and contrivance whereby a person risked money and things of value in order to realize a profit, contrary to the form of the statute", et cetera.

Gambling is defined and proscribed in Article 90 of the Criminal Code,—thus:

"Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.

"Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than one year, or both."

The statute makes no distinction between conducting and assisting in conducting a gambling game as a business. If two persons participate in conducting a gambling game as a business each one of them is an assistant of the other, and both of them

are principals in the misdemeanor. The reason is that the law does not recognize a distinction between principal and accessory in offenses below the grade of felony. It is not essential therefore to the validity of an indictment or a bill of information charging two persons with conducting and assisting in conducting a gambling game as a business that the indictment or bill of information shall designate which one of the defendants is accused of conducting and which one is accused of assisting in conducting the gambling game. If either of the defendants wants such information in advance of the trial he should ask for a bill of particulars.

██ The charge in the bill of information in this case follows the wording of the statute,—stating "every fact and circumstance necessary to constitute the offense", as required by Article 227 of the Code of Criminal Procedure. The statute itself is not vague in its definition of gambling. The fact that the various ways and means by which gambling can be done, and the different kinds of games and contests or contrivances with which it can be done, are innumerable, does not make the statute unconstitutional for being vague or indefinite in its definition of the offense of gambling. To require that a law against gambling shall define each and all of the ways and means by which gambling can be done, and each and all of the different games and contests or contrivances with which the offense can be committed, would make it impossible to provide a general definition in a statute against gambling.

Article 227 of the Code of Criminal Procedure,—which article is applicable as well to bills of information as to bills of indictment,—states the requirements for a valid indictment thus: "The indictment must state every fact and circumstance necessary to constitute the offense, *but it need do no more*, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used." [The italics are ours.]

Article 235 of the Code of Criminal Procedure, which was amended by Act 147 of 1942, provides short forms of indictment for certain crimes enumerated in the statute, and declares that other forms authorized by any law of the state may be used. At the end of this article, as originally written and as amended, is the following proviso: "Provided, That the district attorney, if requested by the accused prior to arraignment, may be required by the judge to furnish a bill of particulars setting up more specifically the nature of the offense charged."

That proviso leaves it to the presiding judge to decide whether the defendant in any given case may compel the district attorney to furnish a bill of particulars; hence the proviso adds nothing to the provision in Article 288, that the judge may, in his discretion, require the district attorney to furnish such details or data as the defendant may ask for.

In Article 252 of the Code of Criminal Procedure,—which article is applicable as well to a bill of information as to an in-

dictment,—it is declared that no indictment shall be quashed, set aside or dismissed on the ground that "any uncertainty exists therein", and that if the judge finds that there is any uncertainty in an indictment he may order it amended to cure the defect.

Articles 253 and 284 of the Code of Criminal Procedure,—which articles also are applicable as well to a bill of information as to an indictment,—provide for amending an indictment on account of any defect in form or substance.

We say that these articles, 227, 235, 252, 253 and 284, are applicable as well to bills of information as to indictments because in Article 216 of the Code of Criminal Procedure it is declared that the rules of pleading contained in this Code shall apply to affidavits charging crimes and to bills of information, as well as to indictments, except in the instances where there is a clear intent to restrict the meaning of the word *indictment* to the finding by a grand jury.

These provisions in the Code of Criminal Procedure therefore make it plain that if the charge in an indictment or a bill of information is made in the words of the statute creating the offense, or in words unequivocally conveying the meaning of the statute, the indictment or bill of information is valid, and if the party accused wants further "particulars setting up more specifically the nature of the offense charged" he may ask for a bill of particulars, but has no right to have the indictment or bill of information quashed for want of such additional information. It was so held very recently in State v. Dark, 195 La. 139,

196 So. 47, and in State v. Dark, 195 La. 160, 196 So. 54.

In the case of State v. Pete, 206 La. 1078, 20 So.2d 368, 369, it was held that a bill of information which charged merely that the defendant had committed "the theft of an automobile, of the value of Twelve Hundred and no/100 ($1200.00) Dollars, the property of Gordons Drug Store, Inc.," was a valid bill of information, and that the defendant's motion to quash the bill on the ground that it failed to charge that the theft or taking of the automobile was with the intent to deprive the owner permanently thereof was not well founded. In the opinion rendered in that case it was declared that the defendant's constitutional guaranty that he should be fully apprised of the nature and cause of the accusation against him was amply protected by the proviso at the end of Article 235 of the Code of Criminal Procedure, that the defendant might ask for a bill of particulars. It is true that the bill of information for the crime of theft in Pete's case was drawn in the short form prescribed in Article 235 of the Code of Criminal Procedure, as amended by Act 147 of 1942; but the proviso, under Article 288 of the Code of Criminal Procedure, ought to be applied as well to an indictment or a bill of information drawn in "the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute", as to an indictment or bill of information drawn in one of the short forms prescribed by Article 235 of the Code of Criminal Procedure.

The appellants cite and rely upon the following cases in which a motion to quash the indictment or bill of information was maintained: State v. Verdin, 192 La. 275, 187 So. 666; State v. Kendrick, 203 La. 63, 13 So.2d 387; State v. Morgan, 204 La. 499, 15 So.2d 866; and to which may be added State v. Hebert, 205 La. 110, 17 So.2d 3. In each of these cases the reason why the indictment or bill of information was held invalid for being too vague and indefinite was, first, that the indictment or bill of information did not inform the defendant specifically of the nature and cause of the accusation against him, and, second, that the district attorney did not ask for an amendment of the indictment or bill of information.

The decision in State v. Verdin et al. was rendered in 1939; that is, before the Criminal Code was adopted. The only information that was given to the defendants in the bill of indictment was that they "did unlawfully disturb the peace". The complaint made in the motion to quash the indictment was that it did not set forth the time, place or manner of the alleged disturbance of the peace. In sustaining the motion the court cited the ruling in State v. Foster, 112 La. 746, 36 So. 670, that the charge that the defendant did "keep a disorderly tavern" was invalid for being too vague and indefinite to inform the defendant of the nature or cause of the accusation against him. In State v. Verdin et al. the indictment did not even inform the defendants of the statute which they were accused of violating. This court assumed that the statute referred to was Act 31 of 1886, as amended by Act 227 of 1934, which enumerated specifically many different ways in which the offense of disturbing the peace could be committed. The statute declared that any person who should go into any public place, into or near any private house, or along any public street or highway near to a private house, or elsewhere, and who should use loud and vociferous or obscene language, or vulgar or indecent language, or swear or curse, or expose his person, or rudely display or wantonly or maliciously discharge or use any pistol or other deadly weapon in such public place, or upon such public street or highway, or near any private house, or elsewhere, or who should do any other act in any manner calculated to disturb or alarm the inhabitants thereof, should on conviction be condemned to pay a fine not exceeding $50 or to be imprisoned for a term not less than 10 nor more than 30 days, or should suffer both the fine and imprisonment, at the discretion of the judge. The ruling, therefore, that the charge that the defendants "did unlawfully disturb the peace" did not inform them of the manner in which they were accused of violating the statute, would not be at all applicable to the present case.

In State v. Kendrick et al. the indictment was intended to charge the defendants with the crime of theft, as defined in Article 67 of the Criminal Code; but the court found the wording of the accusation in the indictment so confusing and contradictory that it was not possible to determine whether the defendants were accused of committing the crime in one or another of the several ways in which it could have been

committed under the statute. The indictment in that case was not drawn in the short form prescribed by Article 235 of the Code of Criminal Procedure as amended by Act 147 of 1942, nor was it couched in the words of the statute creating the offense or in words conveying the meaning of the statute.

In State v. Morgan, decided after the Criminal Code was adopted, as in State v. Verdin decided before the Code was adopted, the charge in the bill of information was merely that the defendant "did unlawfully disturb the peace at 1208 Hodges Street, in Lake Charles," et cetera. The charge was intended to be brought under authority of Article 103 of the Criminal Code, in which article disturbing the peace is defined in seven separately numbered paragraphs, each paragraph defining a different and distinct way in which the offense can be committed. The bill of information therefore did not conform with Article 227 of the Code of Criminal Procedure, but on the contrary failed to state any fact or circumstance necessary to determine what kind of disturbance of the peace the defendant was accused of. In the course of the opinion in the Morgan case it was said that it was not incumbent upon the defendant to make valid the invalid bill of information by asking for a bill of particulars, but that it was incumbent upon the prosecuting attorney to obtain the permission of the court to amend the bill of information, according to the procedure set forth in Articles 252, 253 and 284 of the Code of Criminal Procedure. The decision in the Morgan case therefore is authority for the doctrine which we now

maintain, that if an indictment or bill of information is not drawn in a short form prescribed by law, and is not couched in the wording of the statute creating the offense, or in words unequivocally conveying the meaning of the statute, and if therefore the indictment or bill of information is invalid, it is not incumbent upon the defendant to make it valid by asking for a bill of particulars, but it is incumbent upon the prosecuting attorney to make the indictment or bill of information valid by asking the court's permission to amend the indictment or bill of information according to Articles 252, 253 and 284 of the Code of Criminal Procedure.

In State v. Hebert the defendant was prosecuted for six offenses of indecent behavior with juveniles under the age of 17 years. The bill of information in each of the six cases charged merely that the defendant "being over the age of seventeen did unlawully and feloniously commit indecent behavior, as defined by Article 81 of the Louisiana Criminal Code (Act 43 of 1942), with ——— [naming a girl], a juvenile under the age of seventeen years." The crime is defined in Article 81 of the Criminal Code thus: "Indecent Behavior with Juveniles is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense."

The charge in the bill of information in Hebert's case therefore was not made in

the words of the statute creating the offense, or in words unequivocally conveying the meaning of the statute. There was no statement or suggestion in the bill of information as to what act on the part of the defendant was supposed to have constituted indecent behavior with the juvenile named in the bill of information. The bill did not inform the defendant whether he was accused of committing a lewd or lascivious act upon the person or in the presence of the child. It was not possible to judge from the wording of the bill of information whether the so-called indecent behavior did in fact constitute a lewd or lascivious act, or whether it could have been committed with the intention of arousing or gratifying the sexual desires of either the defendant or the vitctim of the so-called indecent behavior. The prosecuting attorney did not move to amend the bill of information, and we held that it was not incumbent upon the defendant to make the bill of information valid by asking for a bill of particulars.

Our conclusion is that the judge was right in overruling the motion to quash the bill of information in the present case.

The other bills of exception are without merit. For example, a bill was reserved to the overruling of an objection to the introduction in evidence of a so-called dice cage, and other paraphernalia, seized by the deputy sheriff at the time of the arrest of the defendants. The defendants' objection to the offering of the articles in evidence was that the sheriff had kept them in his possession instead of delivering them to the office of the clerk of court. It is contended that it was made the duty of the sheriff by Section 1015 of the Revised Statutes, as amended by Act 45 of 1886, Section 615 of Dart's Procedural Statutes, to deliver the gambling paraphernalia to the office of the clerk of court. The statute leaves much doubt as to whether the sheriff should have kept the articles in his possession or should have delivered them to the clerk's office; but, conceding for the sake of argument that the sheriff should have delivered them to the clerk's office, his neglect to do so did not make the articles inadmissible as evidence against the defendants when the articles were identified as being the same that were taken in charge by the deputy sheriff when he made the arrest. The record shows that the articles were so identified before they were offered in evidence.

Another bill of exception was reserved to the judge's overruling an objection to a question propounded by the district attorney to a defense witness on cross examination. The question was: "Did you ever see any dice tables operated there?" The witness was the constable of the ward in which the offense is alleged to have been committed, and was employed by the defendant, Varnado, in his establishment where the gambling was said to have been done. The witness said he had been so employed for more than seven years. He testified that he arrested and disarmed two deputy sheriffs who went to serve the subpoenas on the witnesses for the trial of this case. And the witness testified that the reason why he arrested the two deputy sheriffs was that they were drunk and

were disturbing the peace at the time when they were undertaking to serve the subpoenas on the witnesses. The witness, in answer to the question of the district attorney, said that he had seen dice tables operated in the establishment but that it had been more than a year since he had seen them in operation. It is argued for the appellants that the only effect of the question asked by the district attorney, and of the answer of the witness, was to prejudice the defendants before the listening public and harass and intimidate them. There is nothing in the record to convince us that the defendants were prejudiced in any way by the question or answer, especially as the case was tried not by a jury but by the judge.

Another bill of exception was reserved to the overruling of an objection to the district attorney's asking the defense witness, just referred to, about his having been arrested on several occasions. The objection was that the questioning should be confined to arrests on charges on which the witness had been convicted. The witness acknowledged that he was arrested on five or six different occasions on criminal charges, and that he had been indicted once. The judge declared in the statement per curiam that he was not influenced by the acknowledgments of the witness that he had been arrested several times. And the judge directs our attention to the fact that the witness had the opportunity in answering each question propounded by the district attorney to say whether any of the arrests had resulted in a conviction. In fact the witness said in his acknowledgment of the arrests that none of them had resulted in a conviction and that he was indicted on only one of the charges for which he was arrested. Our opinion is that no harm was done to the defendants by the cross examination complained of.

The only remaining bill of exceptions is the one which was reserved to the judge's overruling a motion in arrest of judgment, or, in the alternative, for a new trial. A motion in arrest of judgment is appropriate only to an error appearing on the face of the record. The only complaints in that respect in the motion in arrest of judgment are the complaints which were made originally in the defendants' motion to quash the bill of information. Those complaints were disposed of by our ruling on the motion to quash the bill of information. The alternative motion for a new trial is founded upon the appellants' contention that there was no evidence at all that either of the defendants was guilty of conducting or of assisting in conducting a gambling game on the date charged or on the occasion referred to in the bill of information. It is true that the witnesses for the state admitted that they did not see either of the defendants conducting or assisting in conducting the gambling game on the occasion referred to in the bill of information; but there was circumstantial evidence that one of them was conducting the gambling game as a business and that the other was assisting in conducting it at the time, or up to the very moment, when they were arrested. The arrest was made by four deputy sheriffs who raided the

night club and barroom of which the defendant Varnado was proprietor, and in which the defendant Blackwell was employed by Varnado, about midnight on the date stated in the bill of information. The testimony of the deputies discloses these facts: When they arrived at the front door of the establishment Varnado was standing in front of the building and as soon as he saw the deputies he turned and went inside; the deputies rushed in after him and saw Blackwell grabbing up the gambling paraphernalia; one of the deputies called out to Blackwell to stop, but he hastened into a rear room with the articles, and the deputies followed him into the room and immediately took possession of the articles. They consisted of a cage containing two large dice, a sheet of oil cloth with numbers painted on it, spread upon a table in front of the dice cage, and a lot of poker chips. The deputies saw Blackwell gather up the articles from a table in front of the bar, and saw a large crowd of men gathered about the table. Immediately after the arrest was made the deputies took Varnado and Blackwell and the gambling paraphernalia in the deputy's car to the parish seat where Varnado and Blackwell gave bonds and were released. Thereafter one of the deputies, at the request of Varnado and Blackwell, returned them in the deputy's car to Varnado's establishment. One of the deputies testified that Varnado, while returning to his place of business in the deputy's car, told the deputy that he, Varnado, on the occasion of the raid of his establishment, saw the deputies approaching in the automobile and called out to

Blackwell to "move the damned thing" —referring to the gambling device—but that he, Varnado, "couldn't get there quick enough for him [Blackwell] to get away". One of the deputies testified that Varnado, either while under arrest or while returning to his place of business, said that Blackwell was operating the gambling device for his own account. But the important fact is that there was testimony which, if believed by the judge, was sufficient to justify his conclusion that the two men were engaged in conducting the gambling game as a business. It is not important whether the judge considered Varnado, who owned and furnished the gambling paraphernalia, as being the one who conducted the business or as being an assistant of Blackwell in his conducting of the business. If either one of them conducted the gambling game as a business and the other assisted him in conducting it they were both guilty as participants in the misdemeanor defined in Article 90 of the Criminal Code as gambling. Inasmuch as there was some evidence which, if believed by the judge, was sufficient to justify his conclusion that the defendants were guilty of the offense charged, it is not within the jurisdiction of this court to decide whether the evidence was sufficient.

The appeal of Charles Blackwell is dismissed and the conviction and sentence of L. F. Varnado are affirmed.

ROGERS, J., concurs.

PONDER, J., takes no part.

HIGGINS, Justice (dissenting).

The bill of information filed against the accused alleges that on the 8th day of July, 1944, he " * * * did intentionally conduct and directly assist in the conducting, as a business, of a game, contest and contrivance whereby a person risked money and things of value in order to realize a profit, * * *."

Article 90 of Act 43 of 1942, generally known as the Louisiana Criminal Code, reads as follows:

"Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.

"Whoever commits the crime of gambling shall be fined not more than five hundred dollars, or imprisoned for not more than one year, or both."

The defendant filed a motion to quash on the ground that the information fails to legally charge him with any offense, since it does not state any facts or circumstances whatsoever and merely sets forth a conclusion of law, thereby making it impossible for him to prepare his defense, as there is no identification of any acts or conduct with the purported offense, all of which is contrary to the defendant's constitutional right to be informed of the nature and cause of the accusation against him, as provided for by Article I, Section 10 of the Constitution of Louisiana of 1921. This part of the Bill of Rights reads: "In all criminal prosecutions the accused shall be

informed of the nature and cause of the accusation against him; * * *."

In State v. Morgan, 204 La. 499, 15 So. 2d 866, 867, we sustained the defendant's motion to quash the information charging him with disturbing the peace and ordered his discharge, stating:

"The exact charge under which relator is being prosecuted is set out in the bill of information in the following words and figures, to-wit: 'that S. R. Morgan at the parish of Calcasieu on or about the 12 day of May in the year of our Lord One Thousand Nine Hundred and Forty-three (1943) did unlawfully disturb the peace at 1208 Hodge Street, in Lake Charles, Calcasieu Parish, Louisiana; contrary to the form of the statute of the State of Louisiana, in such cases made and provided, in contempt of the authority of said State, and against the peace and dignity of the same.'

"Relator, in his motion to quash, alleges that the bill of information is fatally defective for the following reasons:

" '(a) That said bill of information does not set out any offense as denounced by any law of the State of Louisiana, but merely sets out a conclusion of law.

" '(b) That said bill of information does not set out the time, place and manner in which it is claimed that the said alleged offense was committed.

" '(c) That the said bill of information is too vague and indefinite to permit your mover to either prepare, or present, his defense to the alleged offense therein charged against him.'

"The crime of disturbing the peace is defined in the recently adopted Criminal Code, Act No. 43 of 1942, as follows:

"'Art. 103. Disturbing the Peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public:

"'(1) Engaging in a fistic encounter; or

"'(2) Using of any unnecessarily loud, offensive, or insulting language; or

"'(3) Appearing in an intoxicated condition; or

"'(4) Engaging in any act in a violent and tumultuous manner by any three or more persons; or

"'(5) Holding of an unlawful assembly; or

"'(6) Interruption of any lawful assembly of people; or

"'(7) Commission of any other act in such a manner as to unreasonably disturb or alarm the public.

"'Whoever commits the crime of disturbing the peace shall be fined not more than one hundred dollars, or imprisoned for not more than ninety days, or both.'

"It will thus appear that the offense of disturbing the peace as defined in article 103 of the Criminal Code may consist of one or more separate and distinct acts or offenses committed by the defendant.

"As shown by the comment of the framers of the Code, the article replaces the former statutory law as embodied in section 799 of the Revised Statutes referring to affrays; section 929 of the Revised Statutes referring to disturbing peaceable assemblies; section 1 of Act No. 31 of 1886 and section 1 of Act No. 227 of 1934 relative to public disturbances; section 1 of Act No. 11 of 1908 relative to intoxication in public places; and Act No. 7 of the Extra Session of 1872 relative to unlawful assemblies.

"Act No. 31 of 1886, as amended by Act No. 227 of 1934, which is replaced by article 103 of the Criminal Code, defines a number of different and distinct acts or offenses as constituting disturbances of the peace. In the case of State v. Verdin, 192 La. 275, 187 So. 666, this Court had occasion to consider Act No. 31 of 1886, as amended by Act No. 227 of 1934, in connection with an indictment charging a number of parties with the offense of disturbing the peace. In that case where the question was also presented on a motion to quash, we reversed the conviction of the relators on the ground that the indictment charging relators with disturbing the peace, merely set forth a conclusion of law and was not specific enough to enable the relators to prepare their defense; that as a number of acts or offenses necessarily different and distinct were embraced within the provisions of Act No. 31 of 1886, as amended by Act No. 227 of 1934, it was necessary to charge relators with the commission of one of the many offenses embraced within the statutory provisions.

"The decision in State v. Verdin is applicable to this case. In accordance with the rule announced and applied in the Verdin case, in an indictment or information framed under Article 103 of the

Criminal Code, it is not sufficient for the pleader to merely charge that the defendant did 'unlawfully disturb the peace' at a particular place. He must charge, with that degree of certainty and particularity required in all criminal prosecutions, that the defendant disturbed the peace by committing one or more of the specific acts or offenses enumerated in the article.

"There is no merit in the suggestion contained in the brief filed on behalf of the State that relator's remedy was to ask for a bill of particulars and not to file a motion to quash. We have not been referred to any law, nor do we know of any law which requires a defendant in a criminal prosecution to make valid an invalid information by demanding a bill of particulars.

"The proper procedure was for counsel for the State to apply for and obtain the court's permission to amend the information so as to bring it within the provisions of Article 103 of the Criminal Code. Code Crim. Proc. arts. 253 and 284; State v. Johnson, 181 La. 1, 158 So. 570.

"It is argued on behalf of the State that its contention that relator's remedy was to apply for a bill of particulars instead of filing a motion to quash is supported by the decision of this Court in State v. Dark, 195 La. 139, 196 So. 47. We do not find anything in the Dark case which militates against the legal proposition we are maintaining in this case.

"The rule now existing in this State as to the contents of an indictment or information is to be found in Article 227 of the Code of Criminal Procedure, reading as follows: 'The indictment (or information) must state every fact and circumstance necessary to constitute the offense, but it need do no more, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used.' (Brackets ours.) In considering this article with the indictment under review, the Court held in the Dark case that when a statute creating an offense sets out the facts constituting the offense, it suffices to charge the offense in the language of the statute, but the use of the identical words is not sacramental, but sufficient, since any words may be used that will unequivocally convey the meaning of the statute, so that defendant can not be misled as to the charge he is to answer, the test being, was defendant fully informed of the crime with which he was charged, for nothing can be taken by intendment.

"Article 103 of the Criminal Code enumerates a number of acts, the commission of which constitute the offense of disturbing the peace. None of these specific acts are referred to in the information on which relator is being prosecuted. No facts constituting the offense of disturbing the peace are set out in the information. The information merely alleges that relator was guilty of unlawfully disturbing the peace. This allegation does not set forth any act which, under the article, constitutes the offense. Nor do the words used in the information unequivocally convey the meaning of the article, so that defendant can not be misled as to the charge he is called upon to answer."

In State v. Hebert, 205 La. 110, 17 So.2d 3, we sustained the accused's motion to quash the information charging him with indecent behavior towards a juvenile. In arriving at this conclusion, we said:

"The defendant was prosecuted under six bills of information, each bill charging that he '* * * being over the age of seventeen did unlawfully and feloniously commit indecent behavior, as defined by Article 81 of the Louisiana Criminal Code (Act 43 of 1942), with ———, a juvenile under the age of seventeen years.'

* * * * * * *

"Article 81 of the Louisiana Criminal Code (Act 43 of 1942) defines indecent behavior with juveniles as the 'commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, with the intention of arousing or gratifying the sexual desires of either person.' The charge made against defendant in each of the cases was that he 'did unlawfully and feloniously commit indecent behavior, as defined by Article 81 of the Louisiana Criminal Code'. Counsel for defendant filed in each case a motion to quash the bill of information on the ground (1) that the bill 'does not set out a crime as denounced by the laws of the State of Louisiana', and (2) that the 'charge attempted to be made against him in said bill of information is too vague and indefinite to permit your mover to properly prepare for, and present, his defense thereto.' * * *

"The trial judge overruled the motions to quash and the motions for a bill of particulars for the reason, as stated, by him in his per curiam, that the bill of information in each case 'specifically sets out, and is drawn verbatim, in the language of Article 81 of the Louisiana Criminal Code.' * * *

"Counsel for defendant excepted to the ruling of the court and reserved a bill in each case.

* * * * * * *

"The defendant was convicted in each case and was sentenced to serve terms in the parish jail aggregating two and one-half years. * * * The defendant appealed each case.

* * * * * * *

"The bill of information in each case is fatally defective and should have been quashed.

"The principal reason is that, according to the language of the article, a person over the age of 17 years may commit the crime of 'indecent behavior' in more than one way. One way is by committing 'any lewd or lascivious act upon the person' of the juvenile, which means that a violation of this particular provision of the article would necessarily involve an act by which the offender brought his or her body or person, or some part of it, into physical contact with the body or person of the juvenile. If the act committed is 'lewd or lascivious' and is committed with the intention of 'arousing or gratifying the sexual desires of either person', the law is violated. This is one way of violating the law against indecent behavior with juveniles.

"But there is another and entirely distinct and different way of violating that law.

The article of the Code also covers and denounces indecent sexual displays in the presence of children under 17 years of age. It says that 'indecent behavior with juveniles' is the commission of any lewd or lascivious act upon the person 'or in the presence of any child under the age of seventeen'. Thus the commission of any lewd or lascivious act in the presence of a juvenile is a violation of the law, even though the offender does not touch the body or person of the juvenile.

"Now, since the law denouncing indecent behavior with juveniles may be violated in either one or the other of the two ways above mentioned and described, it follows that an indictment or information which goes no further into detail than merely to charge that the defendant did 'commit indecent behavior, as defined by Article 81 of the Louisiana Criminal Code,' conveys to the defendant no information at all concerning the kind or nature of the acts, by the commission of which he is alleged to have violated the law. The way or manner in which defendant violated the law, if he did violate it, is not suggested by the bill.

"As we have stated, the crime denounced by Article 81 of the Louisiana Criminal Code may be committed in more than one way, by committing lewd or lascivious acts either on the person or in the presence of the child, and, because that is true, the provisions of Article 227 of the Code of Criminal Procedure are peculiarly applicable to a case of this kind. That article provides that: 'The indictment must state every fact and circumstance necessary to consti-

tute the offense, but it need do no more.' The 'offense' here charged is 'indecent behavior with juveniles'. But the bill of information in this case stated no fact or circumstance relating to the commission of the offense, and referred to no act committed by the defendant which was necessary to constitute the offense. The bill conveyed to the defendant no intimation as to what facts the State expected to prove in order to make out its case.

"The bill as worded did convey to the defendant knowledge that he was accused of committing lewd or lascivious acts of some kind, either upon the person or in the presence of a child. But, in a case of this kind, in order that a defendant may be able to prepare a defense, the bill should be so drawn as to inform him whether the alleged lewd or lascivious acts were committed upon the person or in the presence of the child; and further, in either case, he is entitled to specific information as to the kind and character of the acts he is alleged to have committed. Otherwise he is in no position to defend himself at the trial. He would go into court without any knowledge whatever, in so far as the disclosures in the bill are concerned, of the particular acts which the State expects to prove that he committed, and without any knowledge of the kind or nature of the acts intended to be relied on as constituting the offense charged or sought to be charged. A charge in an indictment or bill of information that a person committed indecent behavior, as defined by Article 81 of the Louisiana Criminal Code, is no more than a conclusion of law.

"The ruling in the case of State v. Morgan, 204 La. 499, 15 So.2d 866, is applicable here.

"In that case the defendant was charged in a bill of information with 'unlawfully disturbing the peace', under Article 103 of the Louisiana Criminal Code, which provides that 'Whoever commits the crime of disturbing the peace shall be fined not more than one hundred dollars, or imprisoned for not more than ninety days, or both'. The article provides that 'Disturbing the Peace is the doing of any of the following in such a manner as would foreseeably disturb or alarm the public'. Then follows a list of the acts which, if committed, would 'disturb or alarm the public'.

"In that case, as in the one at bar, the defendant filed a motion to quash the indictment on the ground that the bill of information 'does not set out any offense as denounced by any law of the State of Louisiana, but merely sets out a conclusion of law.'

"The trial judge overruled the motion to quash, and defendant reserved a bill of exception to the ruling. The case was brought before this court on certiorari. We held that the motion to quash should have been sustained. In the course of our opinion, after setting out in detail the acts which constitute a disturbance of the peace, we said:

" 'It will thus appear that the offense of disturbing the peace as defined in Article 103 of the Criminal Code may consist of one or more separate and distinct acts or offenses committed by the defendant.'

"That is the case here. As we have stated, one may be guilty, under Article 81 of the Louisiana Criminal Code, of indecent behavior with juveniles by committing lewd or lascivious acts either upon the person or in the presence of the child involved.

"In the Morgan case it was pointed out that article 103 of the Louisiana Criminal Code replaced Act 31 of 1886, as amended by Act 227 of 1934, and 'defines a number of different and distinct acts or offenses as constituting disturbances of the peace'. We referred to the case of State v. Verdin, 192 La. 275, 187 So. 666, which was a prosecution for disturbance of the peace under Act 31 of 1886, as amended by Act 227 of 1934. In the Verdin case the indictment was couched in the language of the statute —that is, defendant was charged with 'unlawfully disturbing the peace'. In the Morgan case we said, referring to the Verdin case:

" 'In that case where the question was also presented on a motion to quash, we reversed the conviction of the relators on the ground that the indictment charging relators with disturbing the peace, merely set forth a conclusion of law and was not specific enough to enable the relators to prepare their defense; that as a number of acts or offenses necessarily different and distinct were embraced within the provisions of Act No. 31 of 1886 as amended by Act No. 227 of 1934, it was necessary to charge relators with the commission of one of the many offenses embraced within the statutory provisions.'

"The general rule announced by the court in the case of State v. Mines, 137 La. 489, 68 So. 837, is applicable here. It was there held according to Paragraph 1 of the syllabus written by the court, that:

" 'Where the charge contained in an indictment, even though in the language of the statute, is so general as not to disclose the particular acts and things thought to have been committed and done by the defendant and intended to be relied on as constituting the offense charged or sought to be charged, the defendant may require further information by means of a bill of particulars, though the same relief may, ordinarily as well, and perhaps better, be obtained by demurrer or motion to quash.' "

In State v. Larocca, 156 La. 567, 100 So. 720, the accused was charged in an information with carnal knowledge of an unmarried female under the age of consent. He applied for but was denied a bill of particulars and reserved a bill of exception. In annulling the verdict of guilty and the sentence of the lower court and remanding the case, we said: "Ordinarily it is sufficient to charge the offense in the language of the statute, but where the nature of the crime is such, as in cases like the present, the selling and possessing intoxicating liquors, etc., where generally the dealings of the parties are in secret and may take place at one or several places, and as often as may be desired, without creating a status which would make the corpus delicti easy of proof and the fact of the crime known, as would be true in crimes like murder, robbery, etc., the uniform trend of opinion seems to be that the accused, asking it, is entitled to sufficient information to put him on his guard and to prevent the faking of a case against him. Then, too, he is concerned in having the charge definitely established, as to time, place, and circumstances, in order that if, as was claimed in argument in this case, the proof should tend to show that he had committed the offense more than once, he might know which occasion the state relied upon, to be able to plead acquittal or conviction at any subsequent prosecution. State v. Rollins, 153 La. 10, 95 So. 264; Marr's Crim. Juris. (2d Ed.) vol. 1, p. 515."

In State v. Kendrick, 203 La. 63, 13 So.2d 387, 389, the State appealed from a judgment sustaining the accused's motion to quash the indictment, which was brought under Art. 67, Theft, of Chapter 3 of the Louisiana Criminal Code, Act 43 of 1942. The motion to quash was predicated on the ground that the indictment failed to set forth sufficient facts and circumstances to constitute the offense of theft and, therefore, did not charge a crime under our law. After pointing out that Art. 235 of the Code of Criminal Procedure, as amended by Act 147 of 1942, authorized the use of the short form of indictment in the case of theft, but that this form had not been used, we said:

"From the language used in the indictment, we are unable to determine whether the defendant is charged with obtaining money under false pretenses or operating a confidence game or some other offense. In fact, from the very wording of the indictment, we are unable to determine, in the light of the previous separate statutes,

just what offense the defendant is charged with.

"The State seems to rely on the prior jurisprudence of this State to the effect that it is sufficient for the indictment to follow the language of the statute or contain words unequivocally conveying the meaning of the statute and as authorized by Article 227 of the Code of Criminal Procedure.

"It is to be noted that Article 227 of the Code of Criminal Procedure was enacted prior to the adoption of the Louisiana Criminal Code, and it undoubtedly contemplated forms of indictment to be used when various crimes incorporated in this article of the Louisiana Criminal Code, Article 67, were covered by separate and specific statutes. In such instances, the accused would be informed of the nature and cause of the accusation against him as required in Article I, Section 10, of the Constitution of 1921. This section of the Constitution provides:

"'In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him; * * *'

"Article 227 of the Code of Criminal Procedure applies only to a crime covered by special or specific statute in which instance the defendant would be informed of the nature and cause of the accusation. Where the statute is general and covers many offenses, the rule provided for in this article of the Code of Criminal Procedure could not be applied for the reason that in such case it would be violative of

the article and section of the Constitution aforementioned. The paramount law, the Constitution, must control."

It may be well to observe that Article 235 of the Code of Criminal Procedure, as amended by Act 147 of 1942, does not authorize the short form of indictment for the crime of gambling.

In State v. Verdin, 192 La. 275, 187 So. 666, 667, we stated: "But the charge laid in the indictment should be sufficiently specific to enable the defendant to prepare his defense, and if the mere following of the words of the statute does not give this information, then to charge in the words of the statute is to do no more than to charge a conclusion of law. State v. Mines, 137 La. 489, 68 So. 837. Thus the charge that defendant did 'keep a disorderly tavern' is not sufficient. The indictment should specify in what the disorder consisted. State [ex rel. Etie] v. Foster, 112 La. 746, 36 So. 670."

In the instant case, the statute under which the district attorney attempted to charge the accused is general, and unlike the disturbance of the peace and the indecent behavior towards a juvenile statutes, does not set forth the facts and circumstances which would constitute the crime. The accused, in the cases of State v. Morgan and State v. Hebert, supra, by consulting the statutes under which they were charged would have been able to determine that the State was relying upon one of the sets of facts and circumstances specified therein which would constitute the offense. Consequently, he would have been informed to some extent in a gen-

eral way as to the facts, yet, this Court concluded that the general allegations of the informations were insufficient to legally charge an offense. Since the general gambling statute does not in any way designate any facts or circumstances which would define the crime of gambling but merely gives a general definition of what constitutes the offense, obviously, even after the defendant's counsel consulted the statute he would have been at a complete loss to know what the district attorney had in mind when he concluded that the defendant had violated the law. Multiple numbers of ways and means can be used to operate a gambling business, hence, it was impossible for the defendant to know what the State was relying on here. There was no identification of any facts or circumstances whatsoever in the information with the general allegations therein which merely set forth a conclusion of law. If the defendant had pleaded guilty to this charge and immediately after the district attorney had filed another information identically worded and the accused had pleaded autrefois convict and the district attorney stated that he had some other act of the defendant in mind that he considered a violation of the law when he filed the first information, the accused might well be convicted twice of the same offense, because it would be impossible for him to identify the charge to which he pleaded guilty with any of his acts. For instance, if the defendant operated a gambling establishment as a business where gambling with dice, cards, a roulette wheel, etc., was conducted and also operated a baseball park where he held baseball games and allowed the public to bet on them—not as a business but as a matter of individual sport—and he were charged in an information such as the one in question, with gambling, and pleaded guilty, he would necessarily believe that the State was prosecuting him for operating the gambling business or house. However, the district attorney might well say on the first information he had in mind that the operation of the baseball park was a violation of the law because bets were made there. Therefore, the accused would have pleaded guilty when the information was intended by the district attorney to cover facts and circumstances which did not constitute a crime.

The framers of the Constitution wisely required that if the State charge a person with a criminal offense that the indictment, information or affidavit should inform him of the nature and cause of the accusation against him. The purpose of this constitutional requirement was to afford the defendant an opportunity to properly defend himself and to prevent persons from pleading guilty or being found guilty and punished when their acts did not constitute a violation of the law; and also, to avoid a person from being tried or convicted twice for the same offense.

The contention that a bill of particulars was the defendant's remedy is unsound, first, because the accused, under the Constitution, is presumed to be innocent until his guilt has been proved beyond a reasonable doubt and he has been convicted on a legal charge; second, it is well-settled that an indictment or an in-

formation has no probative effect whatsoever; and third, he is not required to compel the State through a bill of particulars to allege a legal charge against him when the information or indictment is so defective as not to set forth a crime. The law places the duty and responsibility on the prosecution to file a legal charge.

The right to require the State to allege the nature and cause of the accusation against the defendant is a constitutional right which he can assert through a demurrer or a motion to quash. The question of whether or not the indictment or information is valid is not a matter left to the discretion of the district judge but fixed definitely by the law. With reference to the bill of particulars, the trial judge has a discretion in deciding whether he shall grant it or not. If a bill of exception is reserved to his adverse ruling by the accused, on appeal, the sole question is whether or not the trial judge arbitrarily abused his discretion. Therefore, it is obvious that a bill of particulars is not a remedy comparable to a motion to quash and cannot take its place.

The instant case in itself is unimportant relatively speaking, but, since the majority opinion establishes a rule which will apply to all prosecutions for offenses under general statutes, the holding therein will have a serious and confusing effect, because it is not in accord with the Constitution and the former jurisprudence of this Court.

Reference is made to the cases of State v. Dark, et al., 195 La. 139, 196 So. 47 and 195 La. 160, 196 So. 54. In both of those cases, the indictments set out facts and circumstances which the State relied upon to show that the offense of bribery had been committed. The complaint was that the State should have alleged additional facts to make the charges more specific. This Court concluded that the charges were legal because they sufficiently informed the accused of the nature and cause of the accusations against them and stated that if they wanted any specific information their remedy to obtain those facts was through a bill of particulars.

The recent case of State v. Pete, 206 La. 1078, 20 So.2d 368, is also cited. This authority is not apposite here for the following reasons: (1) "Theft" is one of the crimes where the State may use the short form of information under the express provisions of Article 235 of the Code of Criminal Procedure, as amended by Act 147 of 1942; (2) The offense of theft is a definite crime under a specific statute and has such a well-recognized meaning that mere reference to the statute would inform the accused of the nature and cause of the accusation against him, in addition to the facts and circumstances set forth in the information; and (3) The Legislature, in authorizing the short form of information did so only with reference to well-defined and specific crimes under particular statutes, but does not authorize the use of such a form with reference to offenses created by the provisions of a statute containing a general definition of a crime. The distinction was made by the Legislature itself in recognition of the

constitutional mandate that the accused is entitled to be informed of the nature and cause of the accusation against him.

I am unable to reconcile the majority opinion with the authorities hereinabove cited and, therefore, respectfully dissent.

FOURNET, Justice (dissenting).

While on its merits this case probably presents a relatively unimportant matter, it is my opinion that the holding of the majority opinion is in direct contravention of the constitutional guarantees contained in our Bill of Rights and the jurisprudence of our state thereunder and will have such a far-reaching effect in all future prosecutions for offenses, that I feel constrained to dissent and assign my reasons therefor.

The district attorney has here charged the defendants in a bill of information, substantially in the general words of the statute, with the crime of gambling as defined in Article 90 of the Criminal Code, in that they "did intentionally conduct and directly assist in the conducting, as a business, of a game, contest and contrivance whereby a person risked money and things of value in order to realize a profit * * *." It is my opinion that this bill of information is fatally defective. It does no more than state the conclusion of the prosecuting attorney without the inclusion of any of the facts or circumstances from which such conclusion is drawn. The accused, consequently, have not been sufficiently apprised of the offense with which they are charged to be able to properly defend themselves; furthermore, there will be no way in which they can protect them-

selves by a plea of guilty or an acquittal in this instance in the event of another prosecution for this same cause.

In order to insure that the accused secures the protection guaranteed him in the Bill of Rights, the legislature, in adopting Article 227 of the Code of Criminal Procedure, provided that "The indictment must state every fact and circumstance necessary to constitute the offense, but need do no more, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used."

As was very aptly pointed out by the United States Supreme Court in the case of United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588, "The object of the indictment is, *first,* to furnish the accused with such a description of the charge against him as will enable him to make his defence, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and *second,* to inform the court of the *facts* alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. *For this, facts are to be stated, not conclusions of law alone.* A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances." This is the accepted rule under federal jurisprudence. See United States v. Simmons, 96 U.S. 360, 24 L.Ed. 819; United States v. Hess, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516; Peters v. United States, 9 Cir., 94 F. 127, 36 C.C.A. 105; Foster v. United States, 9 Cir.,

253 F. 481, 165 C.C.A. 193; Miller v. United States, 5 Cir., 288 F. 816; Boykin v. United States, 5 Cir., 11 F.2d 484; and Bishop's New Criminal Procedure, Sections 568, 589, and 570. (Italics mine.)

This same holds true under the jurisprudence of this state, for, as was very succinctly pointed out by Marr in Vol. 1 of his work on Criminal Jurisprudence, at page 483, Section 325, "It is sufficient to follow the words of the statute, *when those words describe the acts constituting the offense* with such precision and certainty as to fully inform defendant as to the nature of the charge against which he is to prepare his defense, and to furnish him a complete plea of autrefois acquit or convict, in bar of another judgment." (Italics mine.)

The statute in this case is very general in its terms and the indictment does nothing more than trek its wording. This is not enough. As was pointed out by the Supreme Court of the United States in the case of United States v. Simmons, 96 U.S. 360, 362, 24 L.Ed. 819, "Where the offence is purely statutory * * * it is, 'as a general rule, sufficient in the indictment to charge the defendant *with acts* coming fully within the statutory description, in the substantial words of the statute, without any further expansion of the matter.' 1 Bishop, Crim.Proc., Sect. 611, and authorities there cited. But to this general rule there is the qualification, fundamental in the law of criminal procedure, that the accused must be apprised by the indictment, with reasonable certainty, of the nature of the accusation against him, to the end that he may prepare his defence, and plead the

judgment as a bar to any subsequent prosecution for the same offence. *An indictment not so framed is defective, although it may follow the language of the statute."* (Italics mine.)

The test for determining whether or not an indictment drawn in the language of the statute comes within this exception is laid down in the case of Peters v. United States, 9 Cir., 94 F. 127, 131, 36 C.C.A. 105, where the court says: "The true test of the sufficiency of an indictment is not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprised the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

Certainly the information in the instant case cannot stand up under this test. It gives the defendants neither facts nor particulars by which they may identify the offense with which they are charged.

The author of the majority opinion seems to rely on the cases of State v. Dark, 195 La. 139, 196 So. 47; State v. Dark, 195 La. 160, 196 So. 54; and State v. Pete, 206 La. 1078, 20 So.2d 368; for his conclusion that "These provisions in the Code of Criminal Procedure (Articles 227, 235, 252, and 284) therefore make it plain that if the charge in an indictment or a bill of information is made in the words of the statute creating the offense, or in words unequivocally conveying the meaning of

the statute, the indictment or bill of information is valid, and if the party accused wants further 'particular setting up more specifically the nature of the offense charged' he may ask for a bill of particulars, but has no right to have the indictment or bill of information quashed for want of such additional information." (Brackets mine.)

In my opinion these cases are neither in point nor controlling here.

In both of the Dark cases the defendants were charged in indictments with bribery and all of the *facts* and *circumstances* upon which the charge was based were recited in the indictment at great length. In the first Dark case (195 La. 139, 196 So. 47, 48) the indictment charged that the defendants, as conservation agents, were state officers and that as such they did "feloniously receive from one George D. Pipes, a sum of money, to-wit: One Thousand and no/100 Dollars (\$1,000.00) lawful money of the United States of America, as a bribe, present or reward for the purpose of inducing and influencing them, the said W. D. Dark and L. J. Melton, as such State Officers, to protect and shield the said George D. Pipes and one Barlow Inabnet from prosecution for violations of the conservation laws of the State of Louisiana, and the rules, regulations and orders of the Commissioner of Conservation * * * and to then and there be induced and influenced to exercise a power in them invested as such officers, and to perform a duty of them required with partiality and favor."

In disposing of the motion filed by the defendants to have this indictment quashed, the court said: "From a mere reading of Section 1 of Act 78 of 1890 (the act under which the defendants were charged) it is obvious that the gravamen of the offense is the offering or giving of a bribe by any person to an officer, as well as the agreement to accept or the receiving of the same by the officer' * * * to appoint any person to office, to vote or exercise any power in him vested, or to perform any duty of him required with partiality or favor * * *.' In the case at bar the defendants (Conservation Agents) are charged with accepting a bribe of \$1,000 for favoring the bribe-givers (Pipes and Inabnet) in their (defendants') enforcement of the conservation laws by shielding and protecting them (the bribe-givers) from prosecution," and concluded that "the facts and circumstances as stated in the indictment substantially set forth the crime of bribery denounced by Section 1 of Act 78 of 1890. The indictment is couched in the words of the statute *and the facts and circumstances upon which it is based are sufficient to inform the defendants of the nature of the charge against them* * * *." (Italics mine.)

The second Dark case (195 La. 160, 196 So. 54) is substantially identical, the only difference being that these same defendants were accused in the indictment involved in this case with accepting a bribe for the "issuance of an order or permit to acidize four (4) gas wells, designated as Peek Numbers One (1), Two (2), Three (3) and Four (4)"

In the Pete case [206 La. 1078, 20 So.2d 369] the defendant was charged with "the theft of an automobile, of the value of ·Twelve Hundred and no/100 ($1200.00) Dollars, the property of Gordons Drug Store, Inc.," so this was obviously a case where the facts upon which the charge was based were given in the indictment and we held that it was good, having been thus precisely drawn in the short form prescribed in Article 235 of the Code of Criminal Procedure, as amended.

Certainly none of the defendants in these three cases could have failed to appreciate the import of the charges thus brought against them and, if they were acquitted or convicted on such charges, they would be able to identify the offense under the facts and circumstances given in the indictments in the event of an attempt to prosecute them for these same offenses a second time.

In the instant case there is not one single fact or circumstance contained in the information by which the specific crime with which these defendants are charged can be identified. In other words, if the defendants had pleaded guilty to this charge as it is written, and a similar charge had been brought against them, the second charge also being in the identical words of the statute and so identical with the first charge, they could not avail themselves of their plea of guilty to the first charge as a protection against the second prosecution. To illustrate: Suppose the defendants have a number of enterprises or businesses, some of which are gambling within the meaning and contemplation of Article 90 of the Criminal Code—such as the operation of dice tables or roulette wheels where people bet money with an operator who is banking the game—the others not the gambling sought to be denounced in this article although they might not have the approval of certain of the citizens in the community—such as the operation of a club room or social organization where poker is played among the members for money, or the operation of bingo games at fairs and benefits. The defendants are charged as in the bill of information in the instant case, and, believing they are being accused of running the dice tables and roulette wheels, plead guilty, only to find, when they are subsequently charged in an indictment returned by the grand jury in the identical language used in the bill of information and endeavor to plead their conviction or acquittal under the former charge as a bar, that the district attorney had brought his charge upon the complaint of a number of the citizens of the community who objected to their operation of bingo games at fairs and benefits while the grand jury had indicted them for running the dice tables and roulette wheels. They could not point to one single fact or circumstance in the bill of information to substantiate their claim that they thought they were pleading guilty to the offense charged in the indictment when they pleaded guilty to the offense charged in the bill of information, and there would thus be no way in which they could protect themselves against this second prosecution under their plea of guilty to the offense charged in the bill of information.

ROGERS, Justice.

I concur in the opinion and decree in this case.

The rule referred to in State v. Verdin, 192 La. 275, 187 So. 666, that the charge laid in the indictment should be sufficiently specific to enable the defendant to prepare his defense and if the mere following of the words of the statute does not give this information, then the charge in the words of the statute does nothing more than to charge a conclusion of law, is not applicable to this case.

In the Verdin case the only charge contained in the indictment was the charge that the defendants unlawfully disturbed the peace without specifying any act which the appropriate statute defined and punished as a disturbance of the peace. In other words, the indictment in that case did not charge any offense in the words of the statute or in words unequivocally conveying the meaning of the statute.

In State ex rel. Etie v. Foster, 112 La. 746, 36 So. 670, which was cited in the Verdin case, the indictment charged in the words of the statute, that the defendant unlawfully kept a disorderly tavern or tippling house. This Court held that the indictment was insufficient because it failed to specify in what respect the tavern or tippling house had been disorderly. The Court predicated its decision mainly on the following rule announced in Wharton's Criminal Law, 7th Ed., par. 2895, to-wit: "This is a loose mode of pleading, for the question of disorder is a wide one, and there are many kinds of disorder which

are not indictable, and of which it would be intolerable tyranny for the law to attempt to take cognizance. The proper course is to specify what the disorder is."

But the question of conducting or directly assisting in the conducting of gambling as a business as defined and denounced in Article 90 of the Criminal Code is not a wide nor an obscure question. There is only one kind of business denounced as gambling in the code article and that is "the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit." As explained by the comment of the framers of the code the article is intended to apply to all forms of organized gambling whatsoever, save and except those legalized by special statute.

In State v. Maloney, 115 La. 498, 39 So. 539, 544, this Court had under consideration the validity of Act 128 of 1904 providing for the suppression of pool rooms; declaring their operation to be gambling, and prescribing penalties for the opening, conducting or operating the same or working therein. It was urged in that case that the statute was invalid because "the term 'pool room' is generic, embracing many different kinds, none of which are designated in the statute which consequently is void for obscurity." This Court, on rehearing, held that the statute was not invalid on the grounds urged—that the term "pool room" is to be understood in its most usual and popular signification and that the court would take judicial notice of its noto-

rious and unquestioned meaning. On page 513 of 115 La., page 544 of 39 So., of the opinion on rehearing, the Court expresses itself in these words: "Conceding that the term 'pool' or 'pool room' has, according to lexicographers, several meanings, we are of opinion that the legislation on the subject, the direct result of the decisions of this court, show that the term 'pool room' was used to designate a room in which betting on races is carried on. Our Civil Code declares that 'the words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.' Article 14. The lawmaker, in enacting this rule of construction, assumed that the judges must know what the community knows as to the popular meaning of words."

Applying the reasoning which the Court used in construing the meaning of the term "pool room" as employed in the statute under consideration in the Maloney case to the term "gambling" as employed in the code article involved in this case, I have no difficulty in reaching the conclusion as to its "notorious and unquestioned meaning" and of the intention of the Legislature in adopting the Criminal Code to suppress gambling in every form when carried on as a business.

The rule that penal statutes are to be strictly construed is not to be applied with such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of

the statute. State v. McCrystol, 43 La.Ann. 907, 9 So. 922.

I am therefore satisfied that the term "gambling" as defined in the code article embraces every business in which gambling of any kind or character is conducted. The general terms in which the statute is drawn, if they be considered general terms, are not such as to make the statute inoperative. The defendants had the right to request that the specific kind of gambling game they were operating at their place of business be set out in a bill of particulars, if they thought proper to claim that right, but apparently they did not do this.

My opinion is that by the indictment the defendants have been brought within the material words of the statute which they are charged with having violated.

On Rehearing

FOURNET, Justice.

L. F. Varnado and Charles Blackwell were charged jointly in a bill of information with the offense of gambling under Article 90 of the Louisiana Criminal Code (Act 43 of 1942) and Varnado's conviction thereunder was affirmed when this case was originally before us, Blackwell's appeal being dismissed for lack of jurisdiction. We now have the case before us for consideration on Varnado's application for a rehearing.

The principal complaint of the accused was, as pointed out in the majority opinion on the original hearing, the court's overruling of their motion to quash the bill of

information, their contention being "that the bill of information did not inform the defendants sufficiently of the nature and cause of the accusation against them, as required by Section 10 of Article I of the Constitution; that the statute itself does not define the offense or declare the manner in which it can be committed; and, specifically, that the bill of information did not inform the defendants as to which one of them was accused of conducting the alleged gambling game as a business, or as to which one of them was accused of assisting in conducting the gambling business."

It was the seriousness of the issues raised in this motion and the far-reaching effect of the holding in this majority opinion with respect thereto that prompted the granting of this rehearing.

Historically, the right of an accused to be informed in writing of the nature and cause of the accusation against him by the return of an indictment is the result of the assertion of the rights of oppressed peoples against the abuses of the sovereign, and this right has been regarded for centuries as one of the most important securities to the innocent against hasty, malicious, and oppressive prosecutions, as well as one of the immunities and bulwarks of personal liberty. So imbued were our forefathers with the innate justice of this prerogative and so jealously did they guard the security of the citizen against vindictive prosecutions, either by the government, political partisans, or by private enemies, that once they had freed themselves from the shackles of their tyrannical mother country, the original thirteen states were cautiously slow to adopt any form of centralized government without positive assurance that the Bill of Rights would be adopted, and it was adopted at the very first session of Congress, in 1789, guaranteeing, among other rights, that an accused shall be informed of the nature and cause of the accusation.

In keeping with these basic and fundamental principles, the drafters of our constitution of 1921 included therein the provision that "prosecution shall be by indictment or information" (Section 9 of Article I) and that "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him * * *." Section 10 of Article I.

It was, therefore, no idle gesture on the part of the commission appointed to draft a Code of Criminal Procedure when it included in this code the provision that all prosecutions must be by indictment or information (Article 2 and Article 216; also, see Article 686 of Dart's Code of Criminal Procedure, R.S. § 1066), and that "The indictment must state every fact and circumstance necessary to constitute the offense * * *." Article 227. The commission in including these provisions was but codifying the basic law of this state and the jurisprudence thereunder as it existed at the time the code was adopted. The concluding paragraph of the report whereby the commission submitted the proposed Code of Criminal Procedure to the legislature speaks eloquently of the commission's object and its efforts toward the attainment thereof: "We have endeavored conscientiously to present a draft of a Code of Criminal Procedure that will expedite and simplify the trial of

criminal cases. Not only have we studied methods to protect society against offenders, but *we have also attempted in every way to safeguard all of the just and proper rights of the defendant."* (Italics ours.)

In the instant case the accused were charged with the offense sought to be denounced in Article 90 of the Louisiana Criminal Code, which article, in general terms, defines gambling as "the intentional conducting, *or* directly assisting in the conducting, as a business, of any game, contest, lottery, *or* contrivance whereby a person risks the loss of anything of value in order to realize a profit," in the following words: That Varnado and Blackwell, on July 8, 1944, "did intentionally conduct *and* directly assist in the conducting, as a business, of a game, contest *and* contrivance whereby a person risked money and things of value in order to realize a profit, contrary to the form of the statutes of the State of Louisiana, in such cases made and provided * * *." (Italics ours.)

Thus it may be seen that the district attorney, in drawing up this bill of information, has used the general words of the statute, the only difference being the use of the conjunctive "and" where the disjunctive "or" is used in the statute itself, but does not state a single act upon which the charge is based or any of the facts or circumstances upon which his conclusions are based, thus failing to follow our basic requirements for a valid indictment.

"It is the modern rule, universally applied by the courts, that in charging a statutory offense it is not necessary to use the exact words of the statute. An indictment or information for such an offense is sufficient if it follows the language of the statute substantially or charges the offense in equivalent words or others of the same import, *if the defendant is thereby fully informed of the particular offense charged,* and the court is enabled to see therefrom on what statute the charge is founded * * *." 27 Am.Jur. 660, Section 101.

*"The general rule * * * is without application where the statutory words do not in themselves fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements and ingredients necessary to constitute the offense intended to be punished.* As the courts have pointed out, the words of the statute may be sufficient to describe or legally characterize the offense denounced, and yet be wholly insufficient to inform the accused of the specific offense of which he is accused, so as to enable him to prepare his defense or plead his conviction or acquittal as a bar to further prosecution for the same offense, *as where the statute characterizes the offense in mere general or generic terms * * *. An information charging an offense in the words of a statute which defines an offense generally is insufficient where it alleges the offense in the language of the statute, but does not state the specific acts on which the charge is based, and is not sufficiently definite to be of any value as a bar to further prosecution.* In order to particularize the offense it is necessary in some instances, in addition to the statutory words of general description, to set forth the things or means used or other state-

ment of facts and circumstances, as with respect to time, place, person, or other circumstances to identify the particular transaction; and where the offense has relation to a certain place, and the statute adds a descriptive phrase, it must be covered by allegation." 27 Am.Jur. 662, Section 103. (Italics ours.)

As was very aptly stated in Peters v. United States, 9 Cir., 94 F. 127, 131, 36 C.C.A. 105 (certiorari denied by the United States Supreme Court, 176 U.S. 684, 20 S.Ct. 1026, 44 L.Ed. 638), "The true test of the sufficiency of an indictment is not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy as to what extent he may plead a former acquittal or conviction."

■ The information in the case at bar does not allege a single fact or circumstance upon which the offense is based. There is nothing in it from which the accused can tell definitely, or even guess, what acts they are charged with having done. All that appears from the information is that, in the opinion of the district attorney, the accused were guilty of intentionally conducting and directly assisting in the conducting, as a business, of a game, contest, and contrivance whereby a person risked money and things of value in order to realize a profit. There is certainly nothing in this information that informs the accused or the court

on just what *acts* allegedly committed by the accused the prosecuting attorney bases his conclusion that they have been guilty of the offense sought to be charged. This information, therefore, lacks the two essential requirements that give it life. It does not give the accused enough information to enable them to prepare their defense and it is, in no sense of the word, sufficiently definite to be of any value as a bar to further prosecution.

We fail to appreciate what solace counsel for the state can derive from the holdings of this court in the cases of State v. Dark, 195 La. 139, 196 So. 47; State v. Dark, 195 La. 160, 196 So. 54; and State v. Pete, 206 La. 1078, 20 So.2d 368, for they are neither in point nor controlling here.

It is our opinion that the quotation from the first Dark case [195 La. 139, 196 So. 52], to the effect that "When a statute creating an offense sets out the facts constituting it, it suffices to charge the offense in the language of the statute" does not support their contention, but if anyone should entertain any doubt from this bare quotation that the Dark case is authority for such contention, a mere reading of the case will dispel this doubt. It will disclose that the indictment in that case detailed all of the facts and circumstances upon which the charge was based in the following words: That the defendants, as conservation agents, were "State Officers, and as such State Officers did * * * feloniously receive from one George D. Pipes, a sum of money, to-wit: One Thousand and no/100 Dollars ($1,000.00) lawful money of the United States of America, as a bribe, present or

reward for the purpose of inducing and influencing them, the said W. D. Dark and L. J. Melton, as such State Officers, to protect and shield the said George D. Pipes and one Barlow Inabnet from prosecution for violations of the conservation laws of the State of Louisiana, and the rules, regulations and orders of the Commissioner of Conservation * * * and to then and there be induced and influenced to exercise a power in them invested as such officers, and to perform a duty to them required with partiality and favor." In disposing of the motion to quash this indictment we said, quoting from Section 325 of Marr's Criminal Jurisprudence, *" 'It is sufficient to follow the words of the statute, when those words describe the acts constituting the offense with such precision and certainty as to fully inform defendant as to the nature of the charge against which he is to prepare his defense, and to furnish him a complete plea of autrefois acquit or convict, in bar of another indictment.* When a statute creating an offense sets out the facts constituting it, it suffices to charge the offense in the language of the statute, but the use of the identical words is not sacramental, but sufficient, since any words may be used that will unequivocally convey the meaning of the statute, so that defendant cannot be misled as to the charge he is to answer * * * *'*," and concluded *"that the facts and circumstances as stated in the indictment substantially set forth the crime of bribery denounced by Section 1 of Act 78 of 1890. The indictment is couched in the words of the statute and the facts and circumstances upon which it is based are sufficient to in-*

*form the defendants of the nature of the charge against them * * *."* (Italics ours.)

The indictment in the second Dark case relied on by the state was equally full and complete in its recitation of the facts and circumstances upon which it was based and was likewise held to be sufficient.

In the Pete case [206 La. 1078, 20 So.2d 369] the defendant was charged with "the theft of an automobile, of the value of Twelve Hundred and no/100 ($1200.00) Dollars, the property of Gordons Drug Store, Inc.," in conformity with the short form of indictment to be used in cases of "theft" as authorized by Article 235 of the Code of Criminal Procedure, as amended. Obviously, the facts upon which this charge was based and given in the indictment were sufficient to apprise the defendant of the nature and cause of the accusation against him.

Certainly none of the defendants in these three cases could have failed to appreciate the full import of the charges thus brought against them, and, if they were convicted or acquitted thereunder, they would undoubtedly be able to identify the particular offense with which they were charged under the facts and circumstances given in these indictments in the event it was ever again sought to prosecute them for it.

The illustration, without repeating it here, given by the author of this opinion in his dissent from the majority opinion when the case was originally before us for consideration, conclusively demonstrates the total lack of facts or circumstances which could

serve to identify the act or offense sought to be charged in the indictment in this case as a bar to further prosecution.

The contention of counsel for the state that defendant's remedy was to ask for a bill of particulars since it was the legislative intendment in adopting the Code of Criminal Procedure that all pertinent articles therein should be considered together to form a whole and therefore that Article 227 should be read together with Articles 228–253, 284–288, 421, and 517–520, particularly since in a plea of former jeopardy "The modern rule does not demand that the identity of the offense must be established from allegations of the indictment alone, it being sufficient if such identity can be established by competent extrinsic proof," (citing as authority Bartell v. United States, 27 U.S. 427, 33 S.Ct. 383, 57 L.Ed. 583,) is untenable.

It is elementary that an indictment or information lacking in the averments necessary to apprise the accused of the nature and cause of the offense with which he is sought to be charged constitutes no indictment at all and that such a defective indictment or information cannot form the basis of a prosecution, and while the legislature may authorize changes in the form of indictments or informations—as it did in adopting the Crimes Act of 1805 when it provided, no doubt because of the dissatisfaction that had sprung up over technicalities in common law forms of indictments wherein phrasing was more notable for its anthesis and tautology than for its substance, that the indictment be according to the forms of the common law, "divested,

however, of all unnecessary prolixity;" and as it did more recently when it adopted the Code of Criminal Procedure, wherein the forms of indictments and informations in certain cases have been further simplified by eliminating the unnecessary and complicated verbosity of those common law forms, —we do not find anywhere in the Code of Criminal Procedure provision that an accused charged in an indictment or information that totally fails to apprise him of the acts on which the offense with which he is sought to be charged is based must probe the innermost recesses of the prosecuting attorney's mind in an effort to ascertain just what acts of his the attorney thinks constitute a crime.

In any event, we find no provision in the Code of Criminal Procedure requiring that an accused ask for a bill of particulars except when the form of the indictment or information used is as prescribed in Article 235 (the short form of indictments and informations) in certain cases, gambling not being one of these. In this article it is made discretionary with the trial judge to require the district attorney to furnish a bill of particulars if it has been requested by the accused prior to arraignment. On the contrary, the code specifically declares that "Defects in indictments can be urged before verdict *only by demurrer or a motion to quash,* and *the accused is not entitled to any bill of particulars as to the subject-matter charged in the indictment,* but the trial judge may, in his discretion, require the district attorney to file in the case such data as, in the opinion of the judge, may be sufficient." Article 288. Articles 284 and 286

are to the same effect. Title XX of the Code of Criminal Procedure deals with the "Pleadings and Proceedings After Indictment and Before Trial," and articles 284–288 are to be found in Chapter 6 of this title under the heading "Demurrers and Motions to Quash," wherein the remedies of an accused who feels the indictment is not sufficient to properly apprise him of the nature and cause of the offense are specifically set out. (Italics ours.)

This conclusion does not in any way conflict with the provisions to be found in Articles 252 and 253 of the Code of Criminal Procedure, in Chapter 3 of Title XIX of the code under the heading "Recitals Requisite in Indictments for Certain Crimes". (those provided for in the short forms given in Article 235), for, as reflected by the heading to Article 252, these provisions deal with *"Defects in indictment—When not fatal."* (Italics ours.)

Article 421 is equally without application for it provides for the methods of setting aside verdicts by stipulating that "When the error in the proceedings complained of is discoverable only by the taking of evidence, the method of setting aside the verdict is by means of a new trial; when the error is patent upon the face of the papers, the method is by an arrest of judgment or by an assignment of errors."

The same may be said of Articles 517–520, found in Title XXVI of the code under the heading "Motion in Arrest of Judgment," which lies "only for a substantial defect, patent upon the face of the record", Article 517, and does not apply to merely formal defects, those that are cured by verdict, or those that cannot be ascertained without an examination of the record. Article 518. This motion must be disposed of before sentence is passed and can only be filed after verdict. Article 519.

The compiler of Dart's Code of Criminal Procedure, in a note under Article 288, has interposed the observation that "Bills of particulars, except as recited in the proviso of Art. 235, have been abolished * * *," and under Article 235 is to be found the observation that "In view of Art. 288, it seems that the right to demand a bill of particulars is limited to cases in which the indictment is for one of the crimes recited in Art. 235."

So, assuming a bill of particulars is ordered by the trial judge, either in response to the demand of the accused when charged in a short form of indictment under Article 235 or in the instances provided for in Article 288, such pleading forms no part of the indictment and cannot cure it if it is defective for "The office of a bill of particulars is to supply the accused and the court additional information concerning an accusation that the defendant has committed an act or acts constituting a criminal offense. In so far as its purpose is concerned a bill of particulars is in the nature of a pleading, and, when furnished, operates to limit the prosecution in its proof to the specifications therein contained * * *" but *"A bill of particulars cannot create or cure a defect in the indictment or information. It cannot be* furnished the accused to enable him to de-

mur to the indictment; nor, if the indictment is not demurrable on its face, can the furnishing of a bill of particulars make it so. *A bill of particulars is not an amendment of the indictment or information, and cannot change the offense charged in the indictment or in any way aid an indictment fundamentally bad.* Furthermore, it is not a remedy or cure for an indictment so defective that it charges no offense." 27 Am.Jur. 672, Section 112. See, also, State v. Bienvenu, La.Sup., 22 So.2d 196. (Italics ours.)

Moreover, the legislature is unauthorized to adopt any law, procedural or substantive, that would infringe upon any of the rights of the accused as guaranteed to him by the constitution of this state.

The Bartell case does not sustain the contention for which it is cited. While it is true the court used the language attributed to it by counsel for the state in disposing of the defendant's contention that the charge against him was too indefinite to serve as a plea in bar to another prosecution, we find the court qualified this statement by pointing out that extrinsic evidence might be introduced for this purpose only when the description of the act with which the accused is charged brings the offense " 'clearly within the scope of the statute creating the offense, *and at the same time so identifies it as to enable the defendant to fully prepare his defense,*'" [227 U.S. 427, 33 S.Ct. 385], quoting from the rule laid down in Dunbar v. United States, 156 U.S. 185, 15 S.Ct. 325, 39 L.Ed. 390. Furthermore, the indictment in the Bartell case was most full as to the facts and circumstances under which the accused sent an obscene letter through the mails, omitting, only, the contents of such letter because of its unprintable character. (Italics ours.)

Counsel has cited several cases holding that where the charge is in the language of the statute it is sufficient. An examination of these cases will show that while the words of the statute were followed in each instance in the accusation, those words in themselves fully described the specific and well-known mischief sought to be suppressed, thereby apprising the defendant of the nature and cause of the charge against him with certainty and precision.

In the motion to quash the constitutionality of the Louisiana Criminal Code was also attacked on the ground that (1) it embraces more than one object and (2) particularly Article 90 thereof because it neither clearly nor unambiguously sets forth the games, contests, or contrivances against which it is levelled.

In the case of State v. Pete, 206 La. 1078, 20 So.2d 368, 372, we held the act does not embrace more than one object, pointing out that "As indicated in the title of Act No. 43 of 1942, its primary object is to adopt a Criminal Code for the State of Louisiana. Necessarily the definition of crimes and the fixing of the penalties for the violation thereof are germane and may be included therein without a duplicity of objects. * * * Clearly the Legislature could define such crimes as were intended to be covered by the Criminal Code and, in so defining them, could group all offenses

of the same character in a single article
* * *."

And we agree with the conclusion reached in the majority opinion when the case was considered originally, that "The statute itself is not vague in its definition of gambling." We know of no inhibition to the legislature's authority to pass such a general statute so long as the offense sought to be denounced is clearly defined so that the one accused thereunder cannot complain if the particular acts with which he is charged fall within this definition.

For the reasons assigned, the conviction and sentence of L. F. Varnado is set aside, the motion to quash the bill of information is sustained in so far as he is concerned, and, accordingly, he will be discharged. The right of the State to apply for a rehearing is reserved.

ROGERS, J., dissents.

HAMITER, J., concurs in decree.

PONDER, J., recused.

HAWTHORNE, Justice.

I concur in the majority opinion for the reason that the bill of information in this case, charging these defendants with the crime of gambling as denounced by Article 90 of the Louisiana Criminal Code, does not sufficiently inform the accused of the nature and cause of the accusation against them, within the meaning of Section 10 of

Article I of the Louisiana Constitution, and that the information in the general language of the statute in question is not sufficient to furnish these defendants with a complete plea of autrefois acquit or convict in bar of another information or indictment for the same offense.

I cannot, however, subscribe to the view expressed in the majority opinion to the effect that a bill of particulars cannot create or cure a defect in the indictment or information in any case.

In State of Louisiana v. Larry Bienvenu, Jr., La.Sup., 22 So.2d 196, this court found that the prosecutions were instituted under Section 1 of Act 70 of 1908, and that this act was expressly repealed by Section 2 of Article 142 of Act 43 of 1942, the Criminal Code. We held that the bills of particulars filed therein could not be read into the bills of information so as to charge the defendants with the crime of gambling as denounced by Article 90 of the Criminal Code—or, as I understand the holding, that a bill of particulars could never take a criminal prosecution out of the statute on which the indictment or information is based and place it under some other statute; or, still further, that a bill of particulars could not breathe life into an indictment or information based on a statute which has been repealed, so as to place it under some other legal and existing criminal statute.

For these reasons I subscribed to the majority opinion in the Bienvenu case. I do not consider the holding therein to be inconsistent with the view herein expressed.

## On Rehearing

O'NIELL, Chief Justice (dissenting).

The granting of a rehearing in this case became necessary when one of the four subscribers to the original opinion retired from the bench before the expiration of the time allowed by law for the defendants to apply for a rehearing. The three remaining justices who had subscribed to the opinion did not constitute a quorum, according to Section 4 of Article VII of the Constitution, and therefore did not have authority to deny the application for a rehearing.

The rehearing has not affected my opinion that the bill of information—being couched in the words of the statute creating and defining the offense of gambling—which statute itself is conceded to be a valid statute—is not violative of the guaranty in the Bill of Rights that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him. The defendants—being accused in the very words of the statute defining the offense of gambling—did not ask for—or make known to the judge or the district attorney—any additional "data", or "particulars", concerning which they wanted to be informed before pleading to the bill of information. Hence they were not denied the right to be informed as thoroughly as they saw fit to be informed of the nature and cause of the accusation against them.

Nobody doubts the sanctity or inviolability of the provision in the Bill of Rights that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him. The defendants in this case were not denied the benefit of that safeguard in the Bill of Rights.

I cannot reconcile the conclusion of the majority of the members of the court, on rehearing, in this case, with the final paragraph in the majority opinion rendered on rehearing,—reading as follows: "And we agree with the conclusion reached in the majority opinion when the case was considered originally, that 'The statute itself is not vague in its definition of gambling.' We know of no inhibition to the legislature's authority to pass such a general statute as long as the offense sought to be denounced is clearly defined so that the one accused thereunder cannot complain if the particular acts with which he is charged fall within this definition."

It is said in the prevailing opinion, rendered on rehearing, that the bill of information in this case "does not allege a single fact or circumstance upon which the offense is based." It is said that the bill of information lacks two essential requirements, namely, first, that it does not give the defendants enough information to enable them to prepare their defense, and, second, that it is not sufficiently definite to serve as a bar to a future prosecution.

The bill of information alleges every fact and circumstance necessary to constitute the offense of gambling, as defined in the statute creating the offense,—article 90 of the Criminal Code.

The bill of information therefore complies with the requirements of article 227

of the Code of Criminal Procedure. That article prescribes the essential allegations for a valid indictment or bill of information, thus:

"The indictment must state every fact and circumstance necessary to constitute the offense, but it need do no more, and it is immaterial whether the language of the statute creating the offense, or words unequivocally conveying the meaning of the statute, be used."

It is not contended that that article,—in declaring that an indictment need do no more than to state every fact and circumstance necessary to constitute the offense charged and that it is immaterial whether the accusation be couched *in the words of the statute or in words unequivocally conveying the meaning of the statute,*—is violative of the provision in the Bill of Rights that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him.

Article 227 of the Code of Criminal Procedure, therefore, declares plainly enough that an indictment or a bill of information need do no more than to state, in the words of the statute creating the offense, or in words unequivocally conveying the meaning of the statute, every fact and circumstance necessary to constitute the offense charged, as defined in the statute. And articles 252, 253 and 288 provide that if the defendant wants any further "particulars" or "data" he must ask for such particulars or data, and must specify, in his motion for a bill of particulars, or in his demurrer or motion to quash, what particulars or data he desires to be informed of. But, according to article 227, it is not necessary, in order that an indictment or a bill of information shall be valid, that it shall contain any further "particulars" or "data" than the facts and circumstances necessary to constitute the offense charged, as defined in the statute creating it.

In the majority opinion on rehearing article 288 of the Code of Criminal Procedure is cited. The article reads as follows:

"Defects in indictments can be urged before verdict only by demurrer or a motion to quash, and the accused is not entitled to any bill of particulars as to the subject-matter charged in the indictment, but the trial judge may, in his discretion, require the district attorney to file in the case such data as, in the opinion of the judge, may be sufficient."

In the compiler's note to article 288 it is said to appear that bills of particulars, except as stated in the proviso in article 235 allowing certain short forms of indictment, have been abolished; but it is said also in the compiler's note that the decisions cited in the annotations, recognizing the right of an accused to demand a bill of particulars in cases other than those listed in article 235, "may apply to the 'data' that may be asked for." All of which means that the interpretation which this court has given to article 288 is that the party accused is not entitled, *as a matter of right,* to a bill of particulars as to the subject-matter charged in the indictment; but, if he files a demurrer or motion to quash the indictment or bill of information on the ground that the district attorney should furnish further particulars, or

additional data, he must, in his demurrer or motion to quash, or in his motion for a bill of particulars, make known what additional data or particulars he desires to be informed of; otherwise it would be impossible for the judge, in response to the demurrer or motion to quash, or motion for a bill of particulars, to require the district attorney to furnish such additional data as the defendant wants to be informed of before pleading to the indictment or bill of information.

This interpretation of article 288 is verified by comparison with article 252 of the Code of Criminal Procedure, which article declares: "No indictment shall be quashed, set aside or dismissed 'for any one or more of the following defects: * * * (Third) That any uncertainty exists therein. * * * If the court be of the opinion that the third defect exists in any indictment, it may order that the indictment be amended to cure such defect."

And this interpretation of article 288 is further verified by comparison with article 253, which provides: "No indictment shall be quashed, set aside or dismissed * * * nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, *specifically stating the defect claimed,* be made prior to the commencement of the trial or at such time thereafter as the court in its discretion [may] permit." [Italics mine].

In the decisions on the subject of furnishing bills of particulars, or additional data, rendered since the adoption of the Code of Criminal Procedure, article 288 has been construed, consistently, as meaning that the word "data" has been substituted for the word "particulars", or for the term "bill of particulars"; that the defendant in a criminal prosecution is not entitled *as a matter of right* to a bill of particulars as to the subject-matter charged; and that if he files a demurrer or motion to quash the indictment on the ground that it does not allege enough of the facts and circumstances of the offense charged, he must *state specifically the defect claimed,* so that the judge "may order that the indictment be amended to cure such defect", instead of ordering the indictment quashed. The defendant must state, *specifically,* what additional "data" he wants, in order that the judge may determine what data he shall require the district attorney to furnish, under authority of article 288.

In the decisions on this subject, since the adoption of the Code of Criminal Procedure, the court has recognized, consistently, that the right of an accused to demand a bill of particulars if he really wants one was not abolished by article 288, in cases not listed in article 235. The decisions recognize that the substitution of the word "data" for the word "particulars", or for the term "bill of particulars," was merely an instance of calling a rose by another name. "What's in a name? That which we call a rose by any other name would smell as sweet."

For example, in State v. Ezell, decided in 1938, 189 La. 151, 179 So. 64, 65, this court quoted with approval from the opinion in

State v. Gould, decided in 1924—which was 4 years before the Code of Criminal Procedure was adopted—the following paragraphs, thus:

" * * * In the case of State v. Gould, 155 La. 639, 99 So. 490, 491, this court stated:

" 'The matter of furnishing a bill of particulars rests largely in the discretion of the trial judge, and his ruling will not be disturbed unless there is manifest error, and particularly in the absence of a clear showing that the defendant was prejudiced. 1 Bishop, Crim.Proc. 643. State v. Buhler, 132 La. (1065), 1066, 62 So. 145.

" 'The case as presented to the trial judge on the motion for a bill of particulars fully answered the constitutional requirement, "that the accused shall be informed of the nature and cause of the accusation against him." '

"In article 235 of the Code of Criminal Procedure where it sets out certain forms of indictments that may be used, it is provided:

" 'Provided, That the District Attorney, if requested by the accused prior to arraignment may be required by the Judge to furnish a bill of particulars setting up more specifically the nature of the offense charged.'

"Article 288 reads:

" 'Defects in indictments can be urged before verdict only by demurrer or a motion to quash and the accused is not entitled to any bill of particulars as to the subject matter charged in the indictment, but the trial judge may, in his dis-

cretion, require the district attorney to file in the case such data as, in the opinion of the judge, may be sufficient.'

"The doctrine laid down in State v. Gould, supra, has not been changed by articles 235 and 288 of the Code of Criminal Procedure for the reason that in the proviso of article 235 the district attorney 'may' be required to furnish a bill of particulars, and in article 288 of the Code of Criminal Procedure the trial judge may in his discretion require the district attorney to file such data as the judge thinks might be sufficient. In articles 235 and 288 of the Code of Criminal Procedure it is left to the discretion of the trial court. There is no contention herein that there was any abuse of this discretion and no showing made that the defendant has been prejudiced by the overruling of the motion."

On the subject of bills of particulars, the following decisions rendered previous to the adoption of the Code of Criminal Procedure have been cited with approval since the adoption of the Code, viz: State v. Fernandez, 157 La. 149, 102 So. 186, decided in 1924, and State v. Robertson, 158 La. 300, 103 So. 821, decided in 1925. Both cases were cited with approval in State v. Lee, 173 La. 966, loc.cit. 968, 139 So. 302, in support of the following paragraph in State v. Lee:

"We do not think appellants' complaint is well-founded. The state furnished them with all the particulars to which they were entitled. It informed them that it was prosecuting them as principals and it pointed out the law on which the prosecu-

tion was based. Had appellants' request been granted by the trial judge, the state would have been forced to disclose its entire evidence in advance of the trial, which it was not required to do."

In State v. Emerson, decided in 1941, 197 La. 783, 2 So.2d 212, the court overruled a motion to quash the bill of information for keeping intoxicating liquor for sale, on the ground that the bill was defective because it did not state the alcoholic content of the beverage kept for sale; and, in sustaining the ruling, this court cited with approval State v. Lewis, 159 La. 109, 105 So. 243, where the same question was presented by way of a motion for a bill of particulars.

In State v. Sheffield, 201 La. 1055, 10 So. 2d 894, 895, decided in 1942, the court again cited article 288 of the Code of Criminal Procedure as dealing with a bill of particulars, in its reference to the judge's authority to order the district attorney to furnish additional "data" when such additional data is specified in a demurrer or motion to quash. In support of that interpretation of article 288 the court cited two cases decided before the adoption of the Code of Criminal Procedure and one case decided subsequent to the adoption of the Code,—thus: "The matter of furnishing a bill of particulars rests largely within the discretion of the trial judge, and his ruling will not be disturbed unless there is manifest error, and particularly in the absence of a clear showing that the defendant was prejudiced. Article 288, Code of Criminal Procedure; State v. Buhler, 132 La. 1065, 62 So. 145; State v. Lewis, 159

La. 109, 105 So. 243; State v. Ezell, 189 La. 151, 179 So. 64; 1 Bishop, Crim.Proc. 643; Marr's Crim.Jur., 2nd Ed., Vol. 1, Sec. 348, Page 515."

In State v. McClellan, decided in 1923, 155 La. 37, 98 So. 748, 749, 31 A.L.R. 527, where the defendant was charged with attempting to monopolize the laundry business in New Orleans, the trial judge sustained a motion to quash the indictment, on the ground, among other grounds, that the indictment was bad for uncertainty "because it [did] not allege or set out in what manner defendant unlawfully attempted to monopolize the laundry business in the city of New Orleans, or what facts or circumstances constituted said attempts to monopolize." In affirming the ruling this court said: "It is true that neither the indictment nor the agreed statement of facts informs us of the relation which the defendant bears to the laundry business of New Orleans, and what interest he has therein, whether as owner, lessee, manager, or agent. Nor does the indictment set out in what manner the defendant attempted to bring about a monopoly of the laundry business. Section 10 of the Bill of Rights of the Constitution of 1921 plainly provides that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him, and prosecuting officers would do well more carefully to observe this constitutional requirement; but the rule is well settled that, in prosecuting for purely statutory offenses, it is sufficient for the indictment to follow the language of the statute or language equivalent to that used in

the statute. State v. Bulloch, 151 La. 593, 92 So. 127. And it is another familiar rule of jurisprudence that, if the indictment does not sufficiently set forth the acts charged against the defendant particularly in matters of description, he waives the defect, if he fails to ask for a bill of particulars. State v. Cleary, 152 La. 265, 92 So. 892; and cases there cited."

In State v. Newton, 166 La. 297, 117 So. 231, decided in May 1928, before the Code of Criminal Procedure was adopted, the first paragraph of the syllabus reads as follows: "Receiving stolen goods being statutory offense, indictment couched in language of statute (Act No. 72 of 1898) is sufficient."

In State v. Dark et al., 195 La. 139, 196 So. 47, decided in 1940, the two defendants were indicted for accepting a bribe given for the purpose of inducing and influencing them as public officers to protect and shield a certain individual from prosecution for a violation of the conservation laws. The crime is not included in the list of crimes for which a short form of indictment is provided in article 235 of the Code of Criminal Procedure. The defendants demurred and moved to quash the indictment on the ground, among other grounds, that it did not state specifically the facts and circumstances necessary to constitute the offense of bribery of a state officer under the statute upon which the prosecution was based, Act 78 of 1890. The trial judge sustained the demurrer and motion to quash, and the State appealed. In reversing the ruling appealed from, loc. cit. 195 La. 158, 196 So. loc. cit. 53, this court announced the following doctrine:

"If an accused desires to secure additional information or other details which are necessary, and to which he is entitled in order that he might adequately prepare his defense, it is incumbent upon him to request the state to set out, *in a bill of particulars,* this information or other details. State v. Brinkley, 180 La. 679, 157 So. 388, 389. In that case, like the one before us, this court, upholding an appeal by the state from the ruling of the trial judge sustaining a demurrer to the indictment on the ground that it failed to charge a crime under the laws of Louisiana, said:

" 'In our opinion, the trial court should not have sustained the demurrer in this case, as it could have required the state to furnish a bill of particulars, if it considered that any uncertainty existed in the indictment.' See, also, Articles 235 and 288 of the Code of Criminal Procedure." [The italics are mine].

In the Dark case the indictment stated all of the details that the court deemed necessary to inform the defendants of the nature and cause of the accusation against them. But that does not alter the fact that the court, in the opinion rendered in Dark's case, in 1940, recognized the doctrine which we have quoted, and which is so plainly applicable to the present case. That doctrine is that, if an indictment or a bill of information is couched in the words of the statute creating and defining the offense charged,—and if the defendant complains of some specified omission or uncertainty

in the indictment or bill of information,— his remedy is to ask for a bill of particulars with regard to the additional information that he wants,—or to file a demurrer or motion to quash, and, in his demurrer or motion, to specify what additional data he wants in order to be fully informed of the nature and cause of the accusation against him,—and thus to avoid the useless delay and expense of quashing the indictment or bill of information, and filing a new one.

Another decision on this subject, which was rendered previous to the adoption of the Code of Criminal Procedure, State v. Mines, 137 La. 489, 68 So. 837, 839, decided in 1915, was cited with approval in one of the dissenting opinions handed down on the original hearing of the present case by one of the members of the court who has subscribed to the opinion rendered on rehearing in this case. Hence it is virtually conceded by a majority of the members of the court that bills of particulars were not abolished by article 288 of the Code of Criminal Procedure, in cases not listed in article 235. The Mines Case was governed by Sections 1062, 1063 and 1064 of the Revised Statutes, referring to indictments and bills of information. The rule was stated in the Mines Case thus:

"The law thus quoted does not require a defendant to go to trial under an indictment that charges no offense, but contemplates that no indictment shall be held to be insufficient, but may be amended, where its specification of matters not of the essence of the offense charged is imperfect or erroneous, and the defendant makes ob-

jection by demurrer or motion to quash. It may happen, however, that a charge, though in the terms of the statute, is too general, when applied to a particular offense, to place the defendant on his guard, and, in such case, he may properly request, and the court may properly direct (though the granting of the request is largely within the discretion of the court), that the prosecuting officer furnished him with a bill of particulars. City [of New Orleans] v. Chappuis, 105 La. 179, 29 So. 721; State v. Maloney, 115 La. 498, 39 So. 539; State v. Goodson, 116 La. 388, 40 So. 771; State v. Clark, 124 La. 965, 50 So. 811. In the case of State v. Maloney, thus cited, defendant was charged with conducting a 'pool room,' and the court said:

" 'We do not think the generality of the term "pool room" was such as to make the statute inoperative. Board of Com'rs v. Mialegvich, 52 La.Ann. 1292, 27 So. 790. The defendant had, however, the right to have had the specific kind of "pooling" which he was charged with operating at his place of business set out in a bill of particulars, had he thought proper to claim that right; but he did not do so.' "

The first paragraph of the syllabus in the Mines case is quoted with approval in one of the dissenting opinions handed down on the original hearing in the present case, thus: "Where the charge contained in an indictment, even though in the language of the statute, is so general as not to disclose the particular acts and things thought to have been committed and done by the defendant and intended to be relied on as constituting the offense charged or sought

to be charged, the defendant may require further information by means of a bill of particulars, though the same relief may, ordinarily as well, and perhaps better, be obtained by demurrer or motion to quash."

This "same relief" might have been obtained by the defendants in this case by means of a demurrer or motion to quash, specifying the "particulars" or "data" which the defendants wanted, under article 288 of the Code of Criminal Procedure.

In State v. Augusta, 199 La. 896, 7 So. 2d 177, in 1942, the court recognized again that the right of a defendant to obtain additional "data" under article 288 of the Code of Criminal Procedure, before pleading to the indictment or bill of information, was equivalent to the right of a defendant to obtain a bill of particulars under article 235. That decision was cited with approval in State v. Iseringhausen, 204 La. 593 at page 606, 16 So.2d 65, in 1943. In the Augusta case it was said [199 La. 896, 7 So.2d 180]: "The granting or refusing of a bill of particulars is a matter which addresses itself to the sound discretion of the trial judge. Articles 235 and 288, Code of Criminal Procedure."

The decision in State v. Bienvenu, La. Sup., 22 So.2d 196, cited in the prevailing opinion on rehearing in the instant case, is authority only for the proposition—as far as this discussion is concerned—that a bill of particulars cannot serve the purpose of changing a bill of information which charges the defendant with the violation of a statute which has been repealed (Act 70 of 1908), into an accusation of violating an entirely different statute (article 90 of the Criminal Code).

In the prevailing opinion rendered on rehearing in this case, a paragraph is quoted from the opinion in Peters v. United States, 9 Cir., 94 F. 127, 36 C.C.A. 105, [certiorari denied by the United States Supreme Court, 176 U.S. 684, 20 S.Ct. 1026, 44 L.Ed. 638], thus: "The true test of the sufficiency of an indictment is not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged," etc.

I see no objection to that test for determining the validity of an indictment. It is the same test that is provided in article 227 of the Louisiana Code of Criminal Procedure.

From the same page (94 F. 127 at page 131) of the opinion in Peters v. United States, I quote the following paragraph: "Every indictment should charge the crime, which is alleged to have been committed, with precision and certainty, and every ingredient thereof should be accurately and clearly stated; but where the offense is purely statutory, and the words of the statute fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished, *it is sufficient to charge* the defendant in the indictment with the acts coming fully within the statutory description, *in the substantial words of the statute*. Ledbetter v. United States, 170 U.S. 606, 610, 18 S. Ct. 774 [42 L.Ed. 1162] and authorities there cited; 10 Enc. Pl. & Prac. 483, and authorities there cited." [Italics mine].

I quote now the third paragraph of the syllabus in the case cited in the Peters case, namely, Ledbetter v. United States, 170 U.S. 606, 610, 18 S.Ct. 774, 42 L.Ed. 1162, thus: "Where the statute sets forth every ingredient of the offense, an indictment in its very words is sufficient, though that offense be more fully defined in another section."

And, from the same case, page 610 of 170 U.S., page 775 of 18 S.Ct., page 1163 of 42 L.Ed., I quote the following: "But we are of opinion that the statute in this case (Section 16) does define the offense with the requisite precision, and that the pleader has chosen the safer course in charging it in the language of this section."

In a note on the subject of Criminal Procedure, in La.Law Review, Vol. III No. 1, November 1940, p. 241, it is said:

"Several safeguards against surprise are available to the defendant in a criminal trial. The elaborate requirements to which the indictment must conform guarantee a full understanding of the prosecution's charge in advance of trial. Also, a bill of particulars is available in appropriate cases". Here the author cites State v. Ezell, 1938, 189 La. 151, 179 So. 64, thus:

"Arts. 235, 288, La.Code of Crim.Proc. of 1928. It has been held that the bill of particulars should be granted where the short form of indictment is used. State v. White, 1931, 172 La. 1045, 136 So. 47. But it would seem that, in any case, the granting of a request for a bill of particulars lies within the discretion of the trial judge, and is not a matter of right. State v. Ezell, 1938, 189 La. 151, 179 So. 64.

In La.Law Review, Vol. V, No. 4, May 1944, p. 566, under the title Criminal Law and Procedure, and the subtitle Indictment—Bill of Particulars—appears the following comment on State v. Sheffield, 1942, 201 La. 1055, 10 So.2d 894, viz.: "State v. Sheffield applied the rule of Article 288 of the Code of Criminal Procedure that the accused is not entitled to a bill of particulars as a matter of right and that the trial judge has a very wide discretion in ruling on a motion to require the district attorney to furnish additional data regarding the particulars of the offense charged. In that case defendant was indicted for obtaining money upon a promise to improperly influence the official action of a municipal officer. The trial judge had refused to require the district attorney to furnish a bill of particulars setting out the name and title of the municipal officer sought to be influenced. In upholding the lower court's ruling, Justice Ponder relied on Article 288 and prior Louisiana jurisprudence for the well settled proposition that 'the matter of furnishing a bill of particulars rests largely within the discretion of the trial judge, and his ruling will not be disturbed unless there is manifest error, and particularly in the absence of a clear showing that the defendants were prejudiced."

In Tulane Law Review, Vol. XIX, No. 1, October 1944, p. 145, appears a comment on another case entitled State v. Dark, 195 La. 160, 196 So. 54. The comment is in a note on State v. Hebert, 205 La. 110, 17 So.2d 3. The author of the note, in a comment on this Dark Case, observes the distinction between offenses

which are defined in the Criminal Code in two or more separate and distinct ways, as in article 81, defining indecent behavior, dealt with in the Hebert Case, and article 103, defining disturbing the peace, referred to in the Morgan Case (204 La. 499, 15 So. 2d 866), as distinguished from offenses which are defined in only one way, as gambling is defined in article 90 of the Criminal Code. In cases where the Code provides, alternatively, two or more separate and distinct ways in which the offense may be committed, such as indecent behavior is defined in article 81 of the Code, dealt with in State v. Hebert, and as disturbing the peace is defined in article 103, dealt with in State v. Morgan, the indictment or bill of information should state which one of the alternative offenses, as defined in the statute, was committed, otherwise the indictment or bill of information is not couched in the words of the statute defining the particular offense. But, where the offense is defined in only one way in the Criminal Code, as gambling is defined in article 90, it is sufficient to charge the offense in the words of the statute. In the comment on the Dark case, 195 La. 160, 196 So. 54, in the Tulane Law Review, Vol. XIX, No. 1, loc. cit. 145, it is said: "In State v. Dark, supra, the indictments followed the language of the statute under which the defendants were prosecuted and were for that reason held sufficient, it being remarked by Justice Higgins, who rendered the opinion, that in such a situation, the rights of a defendant can be adequately protected by his moving for a bill

of particulars. See State v. Dark, 1940, 195 La. 160, 167, 196 So. 54, 56."

I approve of the doctrine of the Hebert case and of the Morgan case, that where the offense is defined in two or more separate and distinct ways, in the Criminal Code, the indictment or bill of information should state which one of the ways defined in the Code is the way in which the defendant committed the offense. Otherwise, the indictment or bill of information does not charge the crime in the words of the statute creating the offense or in words unequivocally conveying the meaning of the statute, as required by article 227 of the Code of Criminal Procedure.

A remarkable feature of the majority opinion rendered on rehearing in the present case is that the opinion does not indicate what allegation is omitted from the bill of information, the omission of which renders the bill null on its face. If the bill of information is null because of the omission of some essential allegation, the nullity must be apparent on the face of the bill. If that is true the defendants might have gone to trial without filing a demurrer or motion to quash the bill of information,—might have taken a chance on an acquittal on the merits of the case, —and after conviction might have annulled and set aside the whole proceeding by filing a motion in arrest of judgment. For it is too well settled to admit of dispute that a conviction had on an indictment or information that is invalid on its face is absolutely null and may be—and should be—set aside on a motion in arrest

of judgment. In fact such a conviction may be—and should be—set aside on a mere assignment of errors—on appeal.

On the other hand, if the alleged defect in the bill of information consists of an omission of additional facts and circumstances besides those required by article 227—such additional data or particulars as might have been deemed necessary by the accused to enable them to prepare their defense and to protect them against a future prosecution for the same offense—they were at liberty to specify and request whatever additional information they wanted before pleading to the bill of information. If the judge had denied such a request— and had abused his discretion in so doing— this court would have annulled the conviction—as the court did in the case of State v. Mines, 137 La. 489, 68 So. 837,— cited in one of the dissenting opinions handed down on the original hearing of this case. The defendants, therefore, were not denied their constitutional right to be informed of the nature and cause of the accusation against them.

Since it is admitted in the majority opinion rendered on rehearing in this case that article 90 of the Criminal Code—under authority of which article the defendants are being prosecuted—is not unconstitutional—and since the bill of information is couched in the very words of the article—as provided in article 227 of the Code of Criminal Procedure—and since that article also is conceded to be not unconstitutional—it seems illogical to say now that the bill of information—which is a replica of article 90 of the Criminal Code—is

violative of the provision in the Bill of Rights that in all criminal prosecutions the accused shall be informed of the nature and cause of the accusation against him.